No. 23-1362

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

STATE OF NEW HAMPSHIRE,

*Plaintiff-Appellee,*

– v. –

3M COMPANY,

*Defendant-Appellant.*

On Appeal from the United States District Court for the
District of New Hampshire
No. 1:22-cv-145 (Hon. Landya McCafferty)

**BRIEF OF APPELLANT 3M COMPANY**

Joseph A. Foster
Mark C. Rouvalis
Viggo Fish
MCLANE MIDDLETON
900 Elm Street
Manchester, NH 03101
(603) 625-6464
joe.foster@mclane.com
mark.rouvalis@mclane.com
viggo.fish@mclane.com

Michael A. Scodro
Gary A. Isaac
Avi M. Kupfer
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
mscodro@mayerbrown.com
gisaac@mayerbrown.com
akupfer@mayerbrown.com

*Counsel for Appellant 3M Company*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, 3M Company certifies that no parent corporation or publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ..................................................i

TABLE OF AUTHORITIES ...........................................................iv

REASONS WHY ORAL ARGUMENT SHOULD BE HEARD...................xi

INTRODUCTION.....................................................................1

JURISDICTIONAL STATEMENT ................................................3

STATEMENT OF THE ISSUES ...................................................4

STATEMENT OF THE CASE ......................................................4

    A.   Factual Background ......................................................4

        1.   PFAS are used in a variety of products, including AFFF.......4

        2.   Cases involving PFAS contamination related to AFFF are consolidated in a multidistrict litigation ..........................5

        3.   3M and other defendants in the multidistrict litigation are asserting a government contractor defense......................6

    B.   Procedural History.......................................................8

        1.   New Hampshire filed parallel lawsuits alleging that PFAS contaminated its natural resources..............................8

        2.   Initial disclosures in this case did not reveal that any of the natural resources at issue were contaminated by PFAS from MilSpec AFFF and non-AFFF sources ...............10

        3.   3M removed this case after uncovering natural resources with PFAS contamination from MilSpec AFFF and non-AFFF sources .................................................10

        4.   The JPML concluded that transferring this case to the AFFF multidistrict litigation was not yet warranted ..........12

        5.   The district court remanded this case to state court ...........13

SUMMARY OF THE ARGUMENT.............................................16

STANDARD OF REVIEW ........................................................19

## TABLE OF CONTENTS
### (continued)

Page

ARGUMENT ........................................................................................19

I.    The District Court Has Jurisdiction Under The Federal Officer
      Removal Statute ........................................................................19

      A.    The Case Is Related To 3M's Supply Of MilSpec AFFF To
            The Federal Government .............................................................21

      B.    3M Has A Colorable Government Contractor Defense ................28

II.   3M Timely Removed The Case To Federal Court ..............................33

      A.    3M Removed The Case After Uncovering Facts Supporting
            Federal Officer Jurisdiction .........................................................35

      B.    The Papers Identified By The District Court Did Not Start
            The 30-Day Removal Period ..........................................................36

            1.    The complaint in the AFFF Action did not start the
                  mandatory removal period .....................................................39

                  a.    A complaint from another case cannot start the
                        removal period ...............................................................40

                  b.    The complaint in the AFFF Action did not contain
                        facts making clear that this case was removable ...........43

            2.    The removal notice in the AFFF Action did not start the
                  mandatory removal period ......................................................47

            3.    New Hampshire's initial disclosures did not start the
                  mandatory removal period ......................................................49

      C.    Adopting The District Court's Interpretation Would Have
            Consequences That This Court Has Sought To Avoid .................52

CONCLUSION .....................................................................................55

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addo v. Globe Life & Acc. Ins. Co.*,
  230 F.3d 759 (5th Cir. 2000) ....................................................42

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
  357 F. Supp. 3d 1391 (J.P.M.L. 2018) ....................................5, 6

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
  2022 WL 4291357 (D.S.C. Sept. 16, 2022) ............................32

*Arizona v. Manypenny*,
  451 U.S. 232 (1981) ..............................................................46

*Ayo v. 3M Co.*,
  No. 18-cv-0373, 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) ...............32

*Baker v. Atl. Richfield Co.*,
  962 F.3d 937 (7th Cir. 2020) ........................... 22, 23, 24, 25, 26

*Batchelor v. Am. Optical Corp.*,
  185 F. Supp. 3d 1358 (S.D. Fla. 2016)....................................26

*Berera v. Mesa Med. Grp., PLLC*,
  779 F.3d 352 (6th Cir. 2015) ..................................................38

*Bossé v. N.Y. Life Ins. Co.*,
  992 F.3d 20 (1st Cir. 2021)......................................................28

*Boyle v. United Techs. Corp.*,
  487 U.S. 500 (1988) ................................................................29

*City of Hoboken v. Chevron Corp.*,
  45 F.4th 699 (3d Cir. 2022) ....................................................27

*Colorado v. Symes*,
  286 U.S. 510 (1932) ..........................................................46, 47

iv

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Cases (continued)**

*Cuomo v. Crane Co.*,
    771 F.3d 113 (2d Cir. 2014).........................................................31

*Cutrone v. Mortg. Elec. Registration Sys., Inc.*,
    749 F.3d 137 (2d Cir. 2014)................................................ 34, 50, 51, 54

*Dahl v. R.J. Reynolds Tobacco Co.*,
    478 F.3d 965 (8th Cir. 2007) ......................................................43

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
    574 U.S. 81 (2014) ...............................................................20

*Dietrich v. Boeing Co.*,
    14 F.4th 1089 (9th Cir. 2021).............................................37, 43, 53

*Doe v. Am. Red Cross*,
    14 F.3d 196 (3d Cir. 1993)....................................................42, 43

*Fed. Home Loan Bank of Bos. v. Moody's Corp.*,
    821 F.3d 102 (1st Cir. 2016)......................................................28

*Graiser v. Visionworks of Am., Inc.*,
    819 F.3d 277 (6th Cir. 2016) ....................................... 34, 38, 39, 41, 46, 54

*Green v. R.J. Reynolds Tobacco Co.*,
    274 F.3d 263 (5th Cir. 2001) .................................................42, 43

*Hannah v. Schindler Elevator Corp.*,
    No. 3:09-cv-353, 2010 WL 143757 (W.D.N.C. Jan. 8, 2010) ...................42

*Harris v. Bankers Life & Cas. Co.*,
    425 F.3d 689 (9th Cir. 2005) .................................................37, 53

*Hayden v. 3M Co.*,
    No. 15-cv-2275, 2015 WL 4730741 (E.D. La. Aug. 10, 2015).................26

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

## Cases (continued)

*Isaacson v. Dow Chem. Co.*,
   517 F.3d 129 (2d Cir. 2008)......................................................................21

*Jefferson Cty., Ala. v. Acker*,
   527 U.S. 423 (1999) ........................................ 20, 21, 25, 28, 36

*Kircher v. Putnam Funds Tr.*,
   547 U.S. 633 (2006) ...............................................................................32

*Latiolais v. Huntington Ingalls, Inc.*,
   951 F.3d 286 (5th Cir. 2020) .................................................................22

*League of Women Voters of Pa. v. Pennsylvania*,
   921 F.3d 378 (3d Cir. 2019)...................................................................38

*Lightfoot v. Cendant Mortg. Corp.*,
   580 U.S. 82 (2017) .................................................................................28

*United States ex rel. Lovell v. AthenaHealth, Inc.*,
   56 F.4th 152 (1st Cir. 2022) ..................................................................19

*McLaren v. UPS Store Inc.*,
   32 F.4th 232 (3d Cir. 2022) ...........................................................34, 37

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
   547 U.S. 71 (2006) ...........................................................................26, 27

*A.S. ex rel. Miller v. SmithKline Beecham Corp.*,
   769 F.3d 204 (3d Cir. 2014)...................................................................43

*Minnesota v. Am. Petroleum Inst.*,
   63 F.4th 703 (8th Cir. 2023)...................................................................21

*Moore v. Elec. Boat Corp.*,
   25 F.4th 30 (1st Cir. 2022) .................................. 19, 21, 22, 25, 28, 29, 31

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Cases (continued)**

*Nessel v. Chemguard, Inc.*,
  No. 1:20-cv-1080, 2021 WL 744683 (W.D. Mich. Jan. 6, 2021) ....24, 25, 32

*Orange County Water District v. 3M Co.*,
  No. 21-55778, 2022 WL 605630 (9th Cir. Mar. 1, 2022) ..................51, 52

*Romulus v. CVS Pharmacy, Inc.*,
  770 F.3d 67 (1st Cir. 2014).................... 15, 34, 37, 38, 40, 41, 42, 44, 47,
                                                          49, 50, 51, 53, 54

*Roth v. CHA Hollywood Med. Ctr., L.P.*,
  720 F.3d 1121 (9th Cir. 2013) ...........................................................34, 54

*Salter v. Quality Carriers, Inc.*,
  974 F.3d 959 (9th Cir. 2020) ...................................................................31

*Suttlehan v. MidFirst Bank*,
  205 F. Supp. 3d 366 (S.D.N.Y. 2016).....................................................38

*Twinam v. Dow Chem. Co.*,
  517 F.3d 76 (2d Cir. 2008).......................................................................31

*Walker v. Trailer Transit, Inc.*,
  727 F.3d 819 (7th Cir. 2013) ...................................................................34

*Watson v. Philip Morris Cos., Inc.*,
  551 U.S. 142 (2007) .................................................................20, 33, 47

*Whitaker v. Am. Telecasting, Inc.*,
  261 F.3d 196 (2d Cir. 2001)......................................................................38

*Willingham v. Morgan*,
  395 U.S. 402 (1969) .......................................................................20, 28

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Cases (continued)**

*Wisconsin v. Amgen, Inc.*,
    516 F.3d 530 (7th Cir. 2008) .......................................38, 42, 43

*Yarnevic v. Brink's, Inc.*,
    102 F.3d 753 (4th Cir. 1996) .................................................42

**Statutes**

28 U.S.C. § 1407(a) ........................................................................27

28 U.S.C. § 1442 .......................................................................3, 46

28 U.S.C. § 1442(a)(1) ................................. 4, 9, 11, 13, 16, 17, 19, 21, 25, 26

28 U.S.C. § 1446 .......................................................................33, 46

28 U.S.C. § 1446(a) .......................................................................20

28 U.S.C. § 1446(b)(1) ...................................................................34

28 U.S.C. § 1446(b)(3) ........................ 4, 14, 18, 34, 35, 36, 37, 39, 40, 41, 42,
    43, 46, 47, 49, 50, 53, 54

28 U.S.C. § 1447(d) ...................................................................3, 28

28 U.S.C. § 2107(a) .........................................................................4

Removal Clarification Act of 2011, 125 Stat. 545 ........................................21

**Rules and Regulations**

48 C.F.R. § 9.203(a) ........................................................................7

Fed. R. App. P. 4(a)(1)(A) ..................................................................4

Fed. R. Civ. P. 42(a).......................................................................27

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

## Other Authorities

84 Fed. Reg. 70,544 (Dec. 23, 2019) .........................................................4

Don DeYoung et al., U.S. Naval Research Lab., *Fulfilling the Roosevelts' Vision for American Naval Power (1923-2005)* (June 30, 2006).........................................................................4, 5, 6

Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* (Oct. 1980) .....................................................30

*Federal Practice and Procedure* (Rev. 4th ed. 2023) ..........................20, 38

H.R. Rep. No. 112-17 (2011) ............................................................21, 22

*Merriam-Webster*, https://www.merriam-webster.com/dictionary/ascertain ...........................................37

Steven W. Feldman, *Government Contract Guidebook* (4th ed. 2020).........................................................................6

U.S. Dep't of Def., *Aqueous Film Forming Foam Report to Congress* (Oct. 2017) ...................................................6, 30

U.S. Dep't of Def., *Provisions Governing Qualification: Qualified Products List and Qualified Manufacturers List* (Aug. 2019) .........................................................................7

U.S. Envtl. Prot. Agency, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and its Salts* (Nov. 4, 2002) ...............................30

U.S. Judicial Panel on Multidistrict Litig., *MDL Statistics Report – Distribution of Pending MDL Dockets by District* (June 15, 2023)...........................................................................5

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Other Authorities (continued)**

U.S. Navy, *Military Specification: Fire Extinguishing Agent,
Aqueous Film-Forming Foam (AFFF) Liquid Concentrate,
Six Percent, for Fresh and Sea Water* (Nov. 21, 1969)............................6, 7

## REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

This case raises important questions about the construction and application of the statutes that govern federal officer removal.  Oral argument would assist the Court's consideration of those issues.

**INTRODUCTION**

New Hampshire brought parallel lawsuits in state court alleging that per- and polyfluoroalkyl substances (PFAS) in products made by 3M Company and other companies contaminated natural resources statewide. As to 3M, the claims in the actions were practically identical except in one respect. The complaint in this case purported to disavow damages caused by contamination from PFAS used in aqueous film-forming foam (AFFF)—a product that 3M made for the United States military—and the complaint in the other case sought damages solely caused by contamination from PFAS used in AFFF.

New Hampshire filed the duplicative lawsuits to avoid federal court for at least some portion of the relief it seeks. New Hampshire knew that 3M would remove the suit alleging AFFF-related damages to federal court pursuant to the federal officer removal statute and then move to transfer it to a multidistrict litigation proceeding where thousands of AFFF-related lawsuits (including those brought by other States) have been consolidated. But New Hampshire attempted to use the AFFF disavowal to insulate *this* suit from federal officer removal, even if that would mean litigating the same issues in both state and federal court. That attempt fails.

3M properly and timely removed this case to federal court pursuant to the federal officer removal statute after discovering on its own inquiry

that PFAS contamination of several of the at-issue natural resources plausibly came from AFFF used by the military in addition to non-AFFF sources. New Hampshire's disclaimer notwithstanding, this case therefore relates to AFFF that 3M supplied to the military.  Ascertaining which damages if any are attributable to PFAS from non-AFFF sources as opposed to AFFF sources will require complex factfinding regarding where and when the military used 3M's AFFF, and how and to what extent PFAS from that AFFF migrated to the natural resources.  Congress has mandated that defendants are entitled to have those issues resolved in a federal forum.  The  istrictt court erred in holding that New Hampshire eliminated the case's connection to AFFF by disclaiming damages from AFFF.  Under the removal statute, a defendant needs to show only that the case is plausibly associated with its federal act.  This suit easily clears that hurdle.

In addition, 3M's removal notice was timely.  A defendant generally may remove a case on federal officer grounds whenever it discovers that the case is removable.  That is what 3M did here.  It investigated whether any of the natural resources in New Hampshire at issue in this lawsuit were potentially cross-contaminated by PFAS from AFFF and non-AFFF sources, and it removed the case only after uncovering supporting evidence.

There is an exception to the general timing rule above if the plaintiff provides the defendant a case-related document that makes the grounds for removal unequivocally clear.  In that situation, the defendant must remove

the case within 30 days of receiving the document.  But here, New Hampshire did not provide 3M with any document making clear that certain natural resources at issue were contaminated by PFAS from AFFF and non-AFFF sources.  That is unsurprising because New Hampshire was trying to camouflage the case's connection to AFFF in an effort to prevent removal.  The district court nonetheless held that three separate documents could have triggered the 30-day removal period.  Yet none of those documents mentioned, much less made clear, that the alleged PFAS contamination of natural resources at issue in this case stems in part from AFFF.  And two of those documents could not trigger the removal period in any event, because they were not case-related documents that New Hampshire provided to 3M.

The Court should reverse the district court's order remanding this case to state court.

## JURISDICTIONAL STATEMENT

3M removed this case to federal district court pursuant to the federal officer removal statute, 28 U.S.C. § 1442.  The district court entered an order remanding the case on March 29, 2023.  Addendum ("Add.") 1-36.  This Court has jurisdiction under 28 U.S.C. § 1447(d), which provides that "an order remanding a case to the State court from which it was removed pursuant to [28 U.S.C. § 1442]" is "reviewable by appeal."  3M timely filed its

notice of appeal on April 13, 2023.   Appendix ("A") 707; *see* 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A).

New Hampshire filed a motion to summarily dismiss the appeal for lack of jurisdiction, which 3M opposed.  The Court has not yet ruled on that motion.

## STATEMENT OF THE ISSUES

1.  Whether the district court erred in holding that federal jurisdiction is lacking under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

2.  Whether the district court erred in holding that the case was untimely removed under 28 U.S.C. § 1446(b)(3).

## STATEMENT OF THE CASE

### A.    Factual Background

#### 1.    PFAS are used in a variety of products, including AFFF.

PFAS are manmade organic chemicals used in consumer goods, such as food packaging, nonstick cookware, and stain repellants, as well as in certain industrial products.  *See* A56 ¶ 49; A63 ¶¶ 113-14.  PFAS are constituents in AFFF, which is used to extinguish flammable liquid fires.  84 Fed. Reg. 70,544, 70,545 (Dec. 23, 2019).  AFFF is used to protect "civilian airfields, refineries, and fuel tank farms," and it "is in the inventory of almost all fire departments in the United States."  Don DeYoung et al., U.S. Naval Research Lab., *Fulfilling the Roosevelts' Vision for American Naval*

*Power (1923-2005)* 37 (June 30, 2006), https://perma-nent.fdlp.gov/gpo125428/roosevelts.pdf (*Fulfilling the Roosevelts' Vision*).

### 2. Cases involving PFAS contamination related to AFFF are consolidated in a multidistrict litigation.

There are nearly 4,800 pending lawsuits in federal court in which plaintiffs raise allegations related to PFAS contamination from AFFF. *See* U.S. Judicial Panel on Multidistrict Litig., *MDL Statistics Report – Distribution of Pending MDL Dockets by District* 4 (June 15, 2023).[1] The Judicial Panel on Multidistrict Litigation (JPML) centralized those lawsuits in a single proceeding in the District of South Carolina. *Id.*

Since the lawsuits often involve "the same group of AFFF manufacturers," the JPML held that consolidation will "promote the just and efficient conduct of th[e] litigation" for "the parties and witnesses." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018) (*AFFF Litig.*). The cases present "common questions of fact" about, among other things, the chemical properties and effects of PFAS, and the manufacturers' knowledge of those properties and effects. *Id.* The JPML thus held that "[c]entralization will eliminate duplicative discovery," "prevent inconsistent pretrial rulings," and "conserve the resources of the parties, their counsel, and the judiciary." *Id.*

---

[1] https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-June-15-2023.pdf.

5

### 3. 3M and other defendants in the multidistrict litigation are asserting a government contractor defense.

One of the JPML's reasons for consolidating the AFFF lawsuits is that "the AFFF manufacturers likely will assert identical government contractor defenses in many of the actions." *AFFF Litig.*, 357 F. Supp. 3d at 1394. AFFF is used to suppress fires on aircraft carriers and at airfields and other military facilities. *Fulfilling the Roosevelts' Vision* 37. According to the Department of Defense, AFFF is a "mission critical product" that "saves lives and protects assets," Office of the Under Sec'y of Def. for Acquisition, Tech., and Logistics, U.S. Dep't of Def., *Aqueous Film Forming Foam Report to Congress* 1-2 (Oct. 2017), https://tinyurl.com/wshcww4, and its development has been "one of the most far-reaching benefits to worldwide aviation safety," *Fulfilling the Roosevelts' Vision* 37.

Although AFFF initially was developed by the Navy, the government determined that its manufacture required "the aid of the chemical industry." *Fulfilling the Roosevelts' Vision* 37. In 1969, the Navy issued mandatory technical requirements (known as military specifications or MilSpec) for AFFF supplied to the military by private firms. U.S. Navy, *Military Specification: Fire Extinguishing Agent, Aqueous Film-Forming Foam (AFFF) Liquid Concentrate, Six Percent, for Fresh and Sea Water* (Nov. 21, 1969), https://tinyurl.com/yxwotjpg (*AFFF Military Specification*); *see generally* Steven W. Feldman, *Government Contract Guidebook* § 4:14 (4th ed.

2020). The MilSpec directed that AFFF consist of specified compounds and conform to precise requirements regarding viscosity, pH value, surface tension, specific gravity, interfacial tension, foamability, fire performance, and corrosion rate. *AFFF Military Specification* 2-3. AFFF suppliers were required to undertake inspection protocols and testing procedures "to assure supplies . . . conform to [the] prescribed requirements." *Id.* at 3-10. The Navy has amended the MilSpec multiple times since its initial promulgation.

To be eligible for military procurement, an AFFF product must be "list[ed] on the applicable Qualified Products List." *AFFF Military Specification* 2; *see* 48 C.F.R. § 9.203(a). The Navy adds a supplier's product to the list only after examining and testing it, and determining that it conforms to the MilSpec for that product. U.S. Dep't of Def., *Provisions Governing Qualification: Qualified Products List and Qualified Manufacturers List* 2 (Aug. 2019), tinyurl.com/y5asm5bw. The Navy periodically reviews products to "ensure continued integrity of the qualification status." *Id.* at 2.

AFFF that complies with the MilSpec for AFFF is known as MilSpec AFFF. For more than 30 years, AFFF products manufactured by 3M were included on the Qualified Products List for MilSpec AFFF. *See* MSJ Ex. 99, AFFF Litig., No. 2:18-mn-2873 (D.S.C. Nov. 5, 2021), ECF No. 1969-24 (U.S. Dep't of Def., *Mil-F-24385 QPL/QPD History for Type 3 AFFF* (June 2,

2020); U.S. Dep't of Def., *Mil-F-24385 QPL/QPD History for Type 6 AFFF* (June 2, 2020)).

### B.    Procedural History

#### 1.    New Hampshire filed parallel lawsuits alleging that PFAS contaminated its natural resources.

In 2019, New Hampshire filed two complaints against 3M and other companies in state court alleging that its natural resources were contaminated by PFAS.  A104; A164.  As to 3M, the complaints were largely identical.  Using similar language, they stated the same tort claims against 3M related to its design, manufacture, and supply of products containing PFAS.  A129-36 ¶¶ 189-229; A194-200 ¶¶ 236-75.  They contained the same allegations that 3M was aware of dangers associated with PFAS.  A116-18 ¶¶ 75-100; A180-82 ¶¶ 109-33.  And they generally alleged that PFAS contaminated New Hampshire's groundwaters, surface waters, and other natural resources.  A125-29 ¶¶ 156-88; A191-94 ¶¶ 204-35.

But there was one difference between the complaints.  In this case, New Hampshire included a carveout in the complaint for "any . . . relief with respect to any contamination related to [AFFF]."  A110 ¶ 29.  The complaint in the other case (the putative AFFF Action) presented a mirror image.  There, New Hampshire carved out "any . . . relief with respect to any contamination from [PFAS] that is *not* related to . . . AFFF."  A170 ¶ 29 (em-

phasis added).  In addition, the complaint in the AFFF Action alleged specific locations with PFAS contamination from AFFF, A167 ¶ 10, whereas the complaint here did not list any specific contamination sites.  Instead, it generally alleged PFAS contamination "in locations throughout New Hampshire."  A125 ¶ 156.

Soon after New Hampshire served the complaints, 3M removed the AFFF Action to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).  Removal Notice, New Hampshire v. 3M Co., D.N.H. 1:19-cv-800 (July 31, 2019), ECF No. 1.  The removal notice explained that there is federal jurisdiction because the complaint "affirmatively allege[d] that 3M . . . made [MilSpec AFFF] for, and sold them to, the U.S. military," including for use at some of the specific contamination sites listed in the complaint.  Id. ¶ 20.  New Hampshire did not oppose removal.

The JPML transferred the AFFF Action to the multidistrict litigation, which New Hampshire also did not oppose.  Order, AFFF Litig., MDL No. 2873 (J.P.M.L. Aug. 2, 2019), ECF No. 485.  For case management purposes, state plaintiffs in the multidistrict litigation must complete a fact sheet with information about the case, including a list of the locations at issue with PFAS contamination from AFFF.  See A209, A213.  New Hampshire's fact sheet in the AFFF Action listed 26 sites with suspected PFAS contamination from AFFF but stated that its alleged harm was "not limited to the sites identified."  A214.

>  **2.  Initial disclosures in this case did not reveal that any of the natural resources at issue were contaminated by PFAS from MilSpec AFFF and non-AFFF sources.**

Meanwhile, this case proceeded at first in state court and the parties exchanged initial disclosures.  As part of its initial disclosures in this case, New Hampshire provided a list of 244 sites with purported PFAS contamination but stated that its alleged harm was not limited to those sites.  A144, A155-61.  The disclosures further stated, however, that the site list "excludes all sites with contamination known or suspected to be attributable to AFFF, in whole or in part."  A144.  In addition, the disclosures repeated the statement from the complaint that New Hampshire was "not seeking recovery for AFFF-related contamination."  A143.  There was no overlap in the sites that New Hampshire listed in this case and the AFFF Action.

>  **3.  3M removed this case after uncovering natural resources with PFAS contamination from MilSpec AFFF and non-AFFF sources.**

3M uncovered, through its own investigation, that there are natural resources "in locations throughout New Hampshire," A59 ¶ 74, plausibly contaminated by PFAS used in both MilSpec AFFF sources and non-AFFF sources.  A32-35 ¶¶ 29-34.  To make that connection, 3M located and reviewed publicly available evidence including:

- investigative reports prepared for the Air Force indicating possible PFAS "[d]rainage to Great Bay" from AFFF use at Pease Air Force Base, A268; *see* A320-21; A322;

- a U.S. Department of Health and Human Services study that linked AFFF used at Pease Air Force Base to PFAS found in shellfish and deer in the Great Bay National Wildlife Refuge, A340-43; A350-51;

- U.S. Environmental Protection Agency permits for wastewater facilities to discharge effluent into Great Bay, A505, and a recent scientific article identifying PFAS in the effluent from those facilities, A537;

- a report prepared for the Air Force indicating based on area hydrology that AFFF used at Defense Fuels Support Point "presum[ably]" migrated into the Piscataqua River, A620; and

- a New Hampshire Department of Environmental Services report indicating that groundwater from one of the claimed non-AFFF PFAS contamination sites on the site list from the initial disclosures flowed toward the Piscataqua River, A644.

In April 2022, after analyzing those documents, 3M removed this case to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). The removal notice explained that the case satisfies the requirements for federal officer removal. 3M was acting under a federal officer when it designed, manufactured, and supplied MilSpec AFFF for the military. A35-37. New Hampshire's claims regarding PFAS contamination

"in locations throughout New Hampshire," A59 ¶ 74, relate to MilSpec AFFF.  Several bodies of water that are at issue in this case because they have PFAS contamination from non-AFFF sources were also contaminated by PFAS from MilSpec AFFF.  A30-35, A37-38.  And 3M has a plausible federal government contractor defense.  The MilSpec contained reasonably precise specifications governing AFFF, and the federal government "has long understood" that AFFF contains PFAS and can migrate to groundwater, which has been reported to "raise environmental or health issues."  A39-41 ¶¶ 45-46.

### 4. The JPML concluded that transferring this case to the AFFF multidistrict litigation was not yet warranted.

After removal, 3M notified the JPML that this case is a "potential tag-along action[]" warranting transfer, JPML R. 7.1(a), and the JPML clerk conditionally transferred it to the AFFF multidistrict litigation, Order, AFFF Litig., MDL No. 2873 (J.P.M.L. May 10, 2022), ECF No. 1406.

New Hampshire moved to vacate the conditional transfer order on the ground that it is not pursuing damages from AFFF in this case.  Vacatur Motion, AFFF Litig., MDL No. 2873 (J.P.M.L. June 1, 2022), ECF No. 1453-1.  New Hampshire asserted that its claims in this case "indisputably do not involve the same contaminated groundwater" at issue in the AFFF Action.  *Id.* at 13.  To support that assertion, New Hampshire stated that "[t]here is

no overlap between" the site lists from its initial disclosures in this case and its fact sheet in the AFFF Action. *Id.*

In August 2022, the JPML granted New Hampshire's motion to vacate the conditional transfer order, holding that transferring the case to the AFFF multidistrict litigation was not yet warranted. Transfer Vacatur, AFFF Litig., MDL No. 2873 (J.P.M.L. Aug. 3, 2022), ECF No. 1511. The JPML explained that New Hampshire "identified different contamination sites in each action" and that it is conceivable that "PFAS contamination may be statewide, but contamination from AFFF and non-AFFF sources may still be discrete." *Id.* at 2. The JPML invited 3M to "re-notice" the case as a tag-along to the AFFF Action if "discovery and pleading practice" demonstrate that the cases do "involve the same contaminated ground or surface waters." *Id.* at 3.

### 5. The district court remanded this case to state court.

New Hampshire moved to remand this case to state court. It argued that the district court lacked federal officer jurisdiction and that 3M's removal was untimely. The district court granted the motion on those alternative bases. Add. 1-36.

*Jurisdictional Holding.* The district court held that this case was not removable pursuant to the federal officer removal statute because it is not "for or relating to" 3M's supply of MilSpec AFFF to the federal government, 28 U.S.C. § 1442(a)(1). Add. 15-22. The court reasoned that because the

13

complaint "disclaimed any recovery for contamination resulting from 3M's production of AFFF," there is no "connection between" New Hampshire's claims and 3M's production of MilSpec AFFF. Add. 18. The court stated that the disclaimer eliminated any "scenario under which 3M could be found liable for any damages caused by AFFF." Add. 19. The court further stated that if AFFF "caused" PFAS contamination to any natural resources at issue in this case, "the portion attributable to AFFF would be subtracted from any damages," and if "no apportionment is possible, no damages could be awarded." *Id.* Thus, the court found, "[t]o the extent AFFF is relevant, its presence in the contamination could eliminate recovery." *Id.*

*Timeliness Holding.* The district court held that if the case were removable pursuant to the federal officer removal statute, remand still would be warranted because 3M's removal was untimely. Add. 23-35. The court found that the "initial complaint in this suit, standing on its own," did not demonstrate that the case was removable. Add. 28. However, the court reasoned, "at least three" papers "trigger[ed] . . . the 30-day clock" for removal under 28 U.S.C. § 1446(b)(3), and 3M filed the removal notice more than 30 days after receiving those papers. Add. 35.

First, the court held that the complaint in the AFFF Action started the 30-day removal period. Add. 24-31. The court acknowledged that "[o]rdinarily, papers filed in one case . . . could not be considered" in determining whether the removal period has begun in a different case. Add. 25.

14

The court found that this case presents "unique circumstances" that support deviating from that rule:  The AFFF Action "involve[s] the same plaintiff, the same removing defendant, and the same lawyers"; "both suits were filed on the same day" and "cover largely the same factual and legal issues"; and 3M removed this case based on the "alleged inherent link" to the AFFF Action.  Add. 27-28.  The court further found that *Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67 (1st Cir. 2014), supports that "practical and common-sense approach."  Add. 25-26.

The court then held that the complaint in the AFFF Action "clearly and unequivocally stated sufficient facts from which 3M could have easily determined" that this case was removable based on "plausible overlap in PFAS contamination in areas covered by this suit from both MilSpec AFFF and non-AFFF sources."  Add. 28; *see* Add. 31.  The court found that "3M's basis for removing this case . . . is that the court should disregard" language in the complaint that disclaims damages from AFFF.  Add. 29.  The court reasoned that the disclaimer should not "prevent the start of the 30-day clock" because 3M's argument that the disclaimer does not defeat federal officer jurisdiction "was always available."  Add. 29-31.

Second, the court held that 3M's notice of removal in the AFFF Action also could have started the removal period in this case.  Add. 31-32.  The court found that "the facts alleged in both suits are the same, and the basis

for removal in both suits is the same," namely, "3M's supply of MilSpec AFFF at Pease Air Force Base." Add. 32.

Third, the court held that the site list included with New Hampshire's initial disclosures in this case could have started the removal period. Add. 33-35. The court found that 3M could have applied a "reasonable degree of intelligence" to "easily determine that PFAS from MilSpec AFFF released at Pease Air Force Base plausibly overlaps with non-AFFF contamination at [Public Service New Hampshire] Schiller Station or Great Bay." Add. 33. The court reasoned that 3M was on alert because the complaints in this case and the AFFF Action alleged PFAS contamination of tidal estuaries; the Great Bay is a "large, well-known tidal estuary" that "directly abuts" Pease Air Force Base where it is "undisputed . . . that 3M supplied MilSpec AFFF"; and the complaint here alleged that PFAS generally can migrate "long distances." *Id.*

## SUMMARY OF THE ARGUMENT

This case should proceed in federal court. The district court has jurisdiction under the federal officer removal statute, and 3M timely removed the case.

I. This case satisfies the requirements for removal under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). The case relates to 3M's supply of MilSpec AFFF to the federal government because the natural resources at issue were allegedly contaminated by PFAS from both MilSpec

AFFF and non-AFFF sources. New Hampshire disclaims damages from AFFF, but that does not sever the connection to MilSpec AFFF. 3M's removal notice plausibly alleged that several natural resources were cross-contaminated by PFAS from MilSpec AFFF and non-AFFF sources. The case therefore will involve complex fact finding about MilSpec AFFF. That includes questions about where and how the Department of Defense used MilSpec AFFF, how MilSpec AFFF migrated from military or other facilities to the at-issue waters, and whether the PFAS chemicals in those waters are distinguishable based on their source. In comparable scenarios, courts have held that a federal court should be the one to resolve those questions.

The district court held that there is no federal officer jurisdiction because New Hampshire disavowed damages from AFFF. Under the previous version of 28 U.S.C. § 1442(a)(1), a removal notice had to show a causal connection between the case and the defendant's actions under a federal officer. But in 2011, Congress amended the statute to lower the removal bar so that a case is removable so long as it is related to a defendant's federal action. This suit easily clears that bar. New Hampshire's disclaimer notwithstanding, a court will need to undertake a complex, fact-intensive inquiry regarding the location and use of MilSpec AFFF, and its migration to the natural resources at issue.

3M also alleged a colorable government contractor defense. The removal notice explained that the federal government issued, and 3M's products complied with, precise specifications for MilSpec AFFF, and that 3M did not fail to warn the federal government of any dangers related to Mil-Spec AFFF that were known to 3M but not to the government. Those facts are more than sufficient at the removal stage, where courts must accept as true the allegations in the removal notice. Courts thus routinely uphold the removal of similar actions related to MilSpec AFFF.

II. 3M timely removed the case after uncovering facts plausibly showing that the PFAS contamination alleged in this case stems from both Mil-Spec AFFF and non-AFFF sources. New Hampshire omitted that information from the complaint, which vaguely alleged PFAS contamination to natural resources in "locations throughout New Hampshire" but expressly disavowed damages from AFFF. And New Hampshire continued to sow confusion regarding the scope of its claims in its briefing before the JPML.

The district court erred in holding that three earlier documents—the complaint in the AFFF Action, 3M's notice of removal in the AFFF Action, and the site list included with New Hampshire's initial disclosures—each could have started the 30-day removal period under 28 U.S.C. § 1446(b)(3). None of those documents made it unequivocally clear that the alleged PFAS contamination in this case stems at least in part from MilSpec AFFF, particularly in light of New Hampshire's disclaimer. In addition, under this

18

Court's bright-line approach to 28 U.S.C. § 1446(b)(3), neither the complaint nor the removal notice in the AFFF Action counts as an "other paper" that can start the removal period. They are not papers from this litigation, and the removal notice was not provided by New Hampshire to 3M.

## STANDARD OF REVIEW

This Court reviews de novo a jurisdictional determination on removal. *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 34 (1st Cir. 2022). Questions of statutory construction are also reviewed de novo. *United States ex rel. Lovell v. AthenaHealth, Inc.*, 56 F.4th 152, 157 (1st Cir. 2022).

## ARGUMENT

### I. The District Court Has Jurisdiction Under The Federal Officer Removal Statute.

Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), a defendant may in certain circumstances remove a civil action commenced in state court to federal district court. The action must be against "any person acting under" a federal officer and "for or relating to any act under color of such office." *Id.* That language establishes three requirements that the removing defendant must satisfy: (1) "it was acting under a federal officer's authority"; (2) "the charged conduct was carried out for or relating to the asserted official authority"; and (3) "it will assert a colorable federal defense to the suit." *Moore*, 25 F.4th at 34 (internal quotations omitted).

Those requirements are "liberally construed" in favor of removal. *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007); *see Willingham v. Morgan*, 395 U.S. 402, 406 (1969) (rejecting a "'narrow' or 'limited'" reading of the federal officer removal statute). And courts apply "the same liberal rules employed in testing the sufficiency of a pleading . . . to appraise the sufficiency of a defendant's notice of removal." 14C *Federal Practice and Procedure* § 3733 & n.17 (Rev. 4th ed. 2023) (collecting cases); *see* 28 U.S.C. § 1446(a) (removal notice must include "a short and plain statement of the grounds for removal"). Under that standard, "a defendant's notice of removal need include only . . . plausible allegation[s]" regarding the removal requirements, *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014), and courts must "credit the [removing defendant's] theory of the case," *Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 432 (1999).

There is no disagreement in this case that 3M was "acting under" a federal officer's authority when it designed, manufactured, and supplied MilSpec AFFF. *See* A35-36 ¶¶ 36-38. The existence of federal officer jurisdiction accordingly turns on whether the lawsuit is "for or relating to" MilSpec AFFF and whether 3M has a "colorable federal defense." New Hampshire asserts that the case is not related to MilSpec AFFF because it is pursuing damages caused by PFAS from other sources. But New Hampshire cannot disclaim the unavoidable and complicated fact questions in its case that implicate 3M's supply of MilSpec AFFF to the federal government. Nor

can New Hampshire prevent 3M from challenging the allegations in the complaint regarding the sources of the PFAS contamination or from raising a government contractor defense with respect to damages related to cross-contaminated natural resources.

### A. The Case Is Related To 3M's Supply Of MilSpec AFFF To The Federal Government.

A defendant removing a case on federal officer grounds must plausibly allege that the lawsuit is "for or relating to" the act taken under a federal officer or agency. 28 U.S.C. § 1442(a)(1). Establishing that a lawsuit is "for" an act under a federal officer requires showing "a nexus, a causal connection" between the official act and the conduct alleged. *Acker*, 527 U.S. at 431 (1999) (internal quotations omitted). The "hurdle erected by this requirement is quite low." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008).

In 2011, Congress "lower[ed]" that hurdle even further by amending the federal officer removal statute. *Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703, 715 (8th Cir. 2023) (collecting cases); *see* Removal Clarification Act of 2011, § 2(b)(1)(A), 125 Stat. 545. As amended, the statute permits removal if the defendant plausibly alleges that the case is either "for *or relating to*" an act under a federal officer. 28 U.S.C. § 1442(a)(1) (emphasis added). That amendment "broaden[ed] the universe of acts that enable . . . remov[al] to Federal court." *Moore*, 25 F.4th at 35 n.4 (quoting H.R. Rep.

21

No. 112-17, at 6 (2011)).  Federal officer removal thus is available in actions "not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office."  *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 943 (7th Cir. 2020) (quoting *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) (en banc)); *see Moore*, 25 F.4th at 35 n.4 (similar).

At a minimum, New Hampshire's claims are connected or associated with MilSpec AFFF.  The complaint seeks damages for alleged PFAS contamination of natural resources "throughout New Hampshire."  A48 ¶ 2; A54-55 ¶¶ 34; A59 ¶ 74.  3M's removal notice explained that the contamination at issue plausibly came from both MilSpec AFFF and non-AFFF sources.  A30-35 ¶¶ 27-34.  For instance, Great Bay is a tidal estuary with putative PFAS contamination.  A32-33 ¶¶ 30-32.  The PFAS in Great Bay likely came from several sources that "commingled":  MilSpec AFFF used at Pease Air Force Base, non-AFFF effluent emitted from wastewater treatment facilities, and non-AFFF products at nearby sites listed in New Hampshire's initial disclosures.  A32-33 ¶¶ 30-32.  Likewise, PFAS in the Piscataqua River likely came from MilSpec AFFF used at Defense Fuels Support Point as well as non-AFFF PFAS from a site listed in the initial disclosures.  A34 ¶ 33.[2]

---

[2]  New Hampshire has made contradictory statements regarding the scope of the litigation.  New Hampshire has sometimes suggested that the litiga-

The complaint's disclaimer of damages from AFFF, A53-54 ¶ 34, does not sever that connection to MilSpec AFFF. For natural resources like Great Bay and the Piscataqua River, the parties must undertake discovery, and the court must conduct fact-intensive analysis, regarding the supply, use, and movement of MilSpec AFFF. As the district court acknowledged, that will entail evaluating whether MilSpec AFFF resulted in waste streams that are "presen[t] in the contamination," and if so, what "portion . . . of the damages" is attributable to that MilSpec AFFF. Add. 19. And it is far from clear that New Hampshire will be able to distinguish between MilSpec AFFF and non-AFFF sources, which allegedly include the same four PFAS chemicals. *See* A59 ¶ 74; A193 ¶ 219.

The plaintiffs in *Baker v. Atlantic Richfield Co.*, *supra*, made a similar disclaimer, and the Seventh Circuit held that the case belonged in federal court. 962 F.3d at 947. There, residents alleged that DuPont operated facilities that contaminated a housing complex with lead, arsenic, and other

---

tion concerns only the sites listed in the initial disclosures. *See, e.g.*, Vacatur Reply at 5 n.2, AFFF Litig., MDL No. 2873 (J.P.M.L. June 29, 2022), ECF No. 1481 (asserting that Great Bay is not at issue because it "is not one of the sites the State has identified"). At other times, New Hampshire has asserted that this is a "state-wide case" not limited to specific "sites." Remand Motion 12 n.4; *cf.* A48 ¶ 2; A59 ¶ 74 (asserting that PFAS has been found in "natural resources in locations throughout New Hampshire" including "tidal estuaries"). The district court concluded that the case is not limited to the site list. Add. 29. Regardless, 3M's removal notice plausibly alleges cross-contamination of one of the listed sites. *See* A34 ¶ 33.

substances. *Id.* at 939-41. Although the complaint "purport[ed] to disclaim" that the lawsuit "pertain[ed] to DuPont's manufacture and production of Freon-12" for the government, DuPont's removal notice alleged that its "Freon-12 production resulted in waste streams that contained lead and arsenic." *Id.* at 941, 945 n.3. In upholding removal, the Seventh Circuit explained that "a federal court should be the one to resolve" the "difficult causation question" of whether the contamination arose in part "from products DuPont manufactured for the government." *Id.* at 945 n.3; *see, e.g.*, *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying remand motion where causation entailed a "detailed fact-finding process" regarding sources of PFAS contamination). Here too, 3M is entitled to have a federal court resolve the difficult question of whether and to what extent the alleged PFAS in any New Hampshire natural resource is from MilSpec AFFF.

The district court erred in distinguishing *Nessel v. Chemguard, Inc.*, *supra*. In that case, the plaintiffs "surgically divide[d] their complaints between Commercial and MilSpec AFFF." 2021 WL 744683, at *3. The district court there denied the plaintiffs' motion to remand the commercial AFFF case. The court explained that the case would entail "a detailed fact-finding process" regarding "whether the injuries from MilSpec and Commercial AFFF can be distinguished." *Id.* The district court here found *Nessel*

24

inapplicable because the parallel complaints in that case split up the damages between types of AFFF, rather than, as here, between AFFF and non-AFFF sources. Add. 21. But that distinction is irrelevant. As in *Nessel*, to determine where the government contractor defense applies, the court that ultimately adjudicates this case must undertake a "detailed fact-finding process to determine whether the injuries from" disparate sources of PFAS are distinguishable. *Nessel*, 2021 WL 744683, at \*3. New Hampshire's carveout for "contamination [that] came from AFFF," Add. 21, does not obviate those "difficult causation question[s]," which "a federal court should be the one to resolve," *Baker*, 962 F.3d at 945 n.3.

The district court also held that by disclaiming "damages caused by AFFF," New Hampshire "eliminate[d] the connection" to AFFF. Add. 18-19; *see* Add. 19 ("3M cannot be liable . . . for contamination resulting from" AFFF). In so holding, the court cited the current standard, but it mistakenly applied the pre-2011 removal standard, which required "a nexus, a 'causal connection'" between the official act and the conduct alleged, *Acker*, 527 U.S. at 431. That "'causal link' standard . . . is far narrower than the proper standard under § 1442(a)(1), as amended in 2011," *Moore*, 25 F.4th at 34—whether the case is in any way "*connected* or *associated* . . . with acts under color of federal office," *Baker*, 962 F.3d at 943. The court therefore should not have limited its inquiry to whether New Hampshire is pursuing damages caused by MilSpec AFFF. Viewed under the proper standard, this

case is removable because it involves complex questions about whether the contamination at issue resulted from actions 3M took under a federal officer, even if New Hampshire disclaims the portion of its harm that "arise[s] from" those actions. *Id.* at 945 n.3.

The district court also relied on two out-of-circuit remand orders, Add. 17-18, that did not confront the complex questions presented here. The plaintiffs in those cases sued asbestos manufacturers for alleged injuries from asbestos exposure and disclaimed damages from exposures that occurred during their military careers. *Batchelor v. Am. Optical Corp.*, 185 F. Supp. 3d 1358, 1361 (S.D. Fla. 2016); *Hayden v. 3M Co.*, No. 15-cv-2275, 2015 WL 4730741, at *1 (E.D. La. Aug. 10, 2015). Neither remand order addressed the issue of whether and to what extent the injuries were related to the plaintiffs' military asbestos exposures. The courts therefore did not consider the salient question here: whether the removal notice plausibly alleged that this case presents "difficult causation question[s]" regarding actions taken under a federal officer, which "a federal court should be the one to resolve." *Baker*, 962 F.3d at 945 n.3.

Further, the plaintiffs in those cases disclaimed federal-related damages altogether, rather than seeking to divide their damages between overlapping suits against the same party. Courts generally are wary of statutory constructions that "would give rise to wasteful, duplicative litigation" in state and federal courts. *Merrill Lynch, Pierce, Fenner & Smith Inc. v.*

*Dabit*, 547 U.S. 71, 86 (2006). The district court's interpretation of 28 U.S.C. § 1442(a)(1) would do just that. It would incentivize plaintiffs to depart from the normal practice of asserting all of their claims in a single suit—a practice that other State plaintiffs in PFAS suits (including in this Circuit) have observed. *See, e.g.*, Complaint, Puerto Rico v. 3M Co., No. 3:23-cv-1281 (D.P.R. May 31, 2023), ECF No. 1; Complaint, Wisconsin v. 3M Co., No. 23-cv-28 (D.S.C. July 27, 2022), ECF No. 1-1; Complaint, Rhode Island v. 3M Co., PC-2023-02452 (R.I. Super. Ct. May 25, 2023); Notice of Removal, California v. 3M Co., No. 4:22-cv-9001 (N.D. Cal. Dec. 20, 2022), ECF No. 1.

Instead, plaintiffs would follow New Hampshire's lead by filing multiple suits that raise the same issues regarding the same natural resources. The result would be a proliferation of parallel state and federal cases that duplicate discovery and force companies to simultaneously defend identical claims in multiple forums. And unlike duplicative claims in federal courts (which can be consolidated, even if filed in different parts of the country, 28 U.S.C. § 1407(a); Fed. R. Civ. P. 42(a)), duplicative claims pending in state and federal courts cannot be consolidated, so the parties would incur duplicative costs litigating the same case before different courts.[3]

---

[3] In the district court, New Hampshire cited *City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022), as supplemental authority. The court did not rely on that decision and regardless it does not support remand. The plaintiff in that case brought tort claims against oil producers related to global fossil fuel emissions. *Id.* at 706. Unlike here, that plaintiff did not

**B.    3M Has A Colorable Government Contractor Defense.**

3M's removal notice also plausibly alleged a colorable government contractor defense.[4]   The Supreme Court has "rejected a narrow, grudging interpretation" of the "colorable federal defense" requirement.  *Acker*, 527 U.S. at 431 (internal quotations omitted); *see Willingham*, 395 U.S. at 407 (A defendant "need not win his case before he can have it removed.").  A federal defense is colorable "unless it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous." *Moore*, 25 F.4th at 37 (internal quotations omitted).

The only federal defense asserted in 3M's notice of removal is the government contractor defense.  A38-42 ¶¶ 42-48.  To establish that defense

---

divide its damages between parallel suits, and federal officer jurisdiction was lacking because "military fuel use" represented "less than 1/800th of the world's energy consumption."  *Id.* at 713.  In contrast, this case will involve complex causation questions because the alleged PFAS contamination of New Hampshire's natural resources is plausibly attributable in no small measure to MilSpec AFFF.

[4]   Although the district court did not address whether 3M has a colorable federal defense, *see* Add. 2 n.4, this Court has discretion to address that "quintessentially legal issue[]," which requires "no further development of the record . . . to resolve," *Bossé v. N.Y. Life Ins. Co.*, 992 F.3d 20, 32 (1st Cir. 2021).  "Judicial economy weighs in favor of prompt resolution of the jurisdictional issue[]" now.  *Fed. Home Loan Bank of Bos. v. Moody's Corp.*, 821 F.3d 102, 108 n.3 (1st Cir. 2016), *abrogated on other grounds by Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82 (2017).  Doing so will head off future remand appeals under 28 U.S.C. § 1447(d) and permit the parties to "proceed to the merits in an appropriate venue."  *Id.* at 108 n.3; *see, e.g., Moore*, 25 F.4th at 36 (reaching this same issue "as a matter of discretion").

with respect to New Hampshire's claims, 3M ultimately must show that (1) the federal government used "reasonably precise specifications" for MilSpec AFFF products; (2) the federal government determined that 3M's products "conformed to those specifications"; and (3) 3M warned the federal government of any material dangers of MilSpec AFFF that were "known to" 3M but not the federal government. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988); *see Moore*, 25 F.4th at 37. The removal notice plausibly alleged that 3M will be able to make that showing. A38-41 ¶¶ 42-47.

In the district court, New Hampshire did not dispute that 3M plausibly alleged the first two requirements for the government contractor defense. The removal notice explained that the federal government used "reasonably precise specifications" for the formulation, performance, and testing of MilSpec AFFF. A39-40 ¶ 45. In addition, 3M's AFFF products appeared on the Department of Defense's Qualified Products List, which happens only if the Naval Sea Systems Command has determined that those products conform to the MilSpec. *Id.*

The removal notice also plausibly alleged that 3M was not aware of any material risk regarding MilSpec AFFF that was unknown to the federal government. The MilSpec contained testing protocols and requirements regarding toxicity, chemical oxygen, and biological demand. A40-41 ¶ 46. The federal government has long understood that AFFF contains PFAS, that

AFFF constituents may migrate to groundwater, and that some studies suggest potential related adverse effects.[5]  For example, a 1980 report studying the use of AFFF to suppress fires at military installations concluded that "[a]ll of the constituents resulting from firefighting exercises are considered to have adverse effects environmentally."[6]  More recently, the Department of Defense issued a report acknowledging concerns about PFAS raised by the U.S. Environmental Protection Agency but nonetheless describing AFFF as a "mission critical product [that] saves lives and protects assets." A40-41 ¶ 46 (quoting *Aqueous Film Forming Foam Report to Congress* 1-2).

In the district court, New Hampshire argued that those allegations are insufficient because the removal notice did not specifically "deny" that 3M knew of the potential health risks discussed in those reports at some earlier date and kept that information from the federal government.  Remand Motion 14.  Yet the notice described the federal government's awareness of those risks and asserted that 3M "was not aware of any dangers unknown to the Government."  A41-42 ¶ 48.  The notice further asserted

---

[5]   A40-41 ¶ 46 (citing U.S. Envtl. Prot. Agency, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and its Salts* 1-6 (Nov. 4, 2002), perma.cc/T9PD-FC9M).

[6]   A40-41 ¶ 46 (citing Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), apps.dtic.mil/sti/pdfs/ADA136612.pdf).

that "[a]t a minimum, . . . Naval Sea Systems Command 'made a discretion-ary determination' regarding the formulation and other specifications of MilSpec AFFF after weighing" benefits against alleged risks.  A41 ¶ 47 (quoting *Twinam v. Dow Chem. Co.*, 517 F.3d 76, 90 (2d Cir. 2008)).

Those allegations are sufficient at the removal stage where courts do not undertake "fact-intensive motion practice . . . to determine" whether a federal defense will ultimately succeed.  *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014).  Rather, courts "accept[] . . . as true" the allegations in the removal notice "and draw[] all reasonable inferences in [the defendant's] favor" to determine whether the defense is colorable.  *Salter v. Quality Car-riers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020).  As discussed above, 3M cited extensive evidence showing that the federal government has long been aware of potential dangers associated with AFFF.  New Hampshire cites no evidence to support its speculation that there was some earlier period when 3M was aware of those issues and the government was not.  That conjecture does not show that 3M's asserted defense is "wholly insubstantial and friv-olous."  *Moore*, 25 F.4th at 37.

Notably, the court overseeing the AFFF multidistrict litigation and other courts uniformly have upheld the removal of similar actions involving MilSpec AFFF based on the assertion of a colorable government contractor defense.  *See, e.g.*, Order, AFFF Litig., No. 2:18-mn-2873 (D.S.C. Aug. 24, 2022), ECF No. 2559; Order, AFFF Litig., No. 2:18-mn-2873 (D.S.C. Oct. 1,

2019), ECF No. 325; *see also Nessel*, 2021 WL 744683, at \*4; *Ayo v. 3M Co.*, No. 18-cv-0373, 2018 WL 4781145, at \*6-15 (E.D.N.Y. Sept. 30, 2018).  The AFFF multidistrict litigation court has also found, based on extensive evidence, that 3M's government contractor defense presents genuine issues of fact for trial.  *See AFFF Litig.*, 2022 WL 4291357, at \*12, 15 (D.S.C. Sept. 16, 2022).  By definition, a defense that presents triable issues is more than "colorable."

Finally, the fact that New Hampshire alleges that it is not pursuing damages from AFFF does not undermine 3M's right to assert a colorable federal contractor defense.  The federal officer removal statute "is an exception to the 'well-pleaded complaint' rule." *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006).  New Hampshire "cannot prevent [3M] from raising the production of MilSpec AFFF as a defense or an alternate theory" of causation for the natural resource contamination at issue.  *Nessel*, 2021 WL 744683, at \*3.  That alternative theory is likely to arise in this case because New Hampshire expressly alleged in the AFFF Action that 3M "produced MilSpec AFFF and that PFAS from AFFF spread contamination throughout the state." *Id.*; *see* A193 ¶ 219.

The district court reasoned that New Hampshire cannot recover for PFAS pollution to cross-contaminated resources unless it can "subtract[]" "the portion [of its damages] attributable to AFFF," Add. 19, but that does not change the calculus.  New Hampshire cannot dictate the defenses 3M

32

will raise as to liability, and the removal notice plausibly alleges a colorable government contractor defense, *see* A38-42 ¶¶ 42-48. 3M's ability to raise that defense is particularly important here because New Hampshire's parallel suits raise the specter of inconsistent results.

Further, New Hampshire has not clearly foresworn damages related to cross-contaminated natural resources where "no apportionment is possible" between AFFF and non-AFFF sources. Add. 19. The remand motion indicated that New Hampshire may seek damages in that scenario. *See* Remand Motion 11 (contending New Hampshire would recover so long as it "prove[s] that its complained-of injuries are attributable to any of the defendants' PFAS-containing products *besides* AFFF"). And 3M intends to raise a government contractor defense in response. 3M also is entitled to raise that defense with respect to natural resources purportedly contaminated from non-AFFF sources that 3M believes are in fact related to Mil-Spec AFFF. For all of these scenarios, the purpose of federal officer removal is to ensure "a federal forum in which to assert [that] federal immunity defense[]." *Watson*, 551 U.S. at 150. The case therefore should proceed in federal court.

## II.    3M Timely Removed The Case To Federal Court.

Under the removal procedure statute, 28 U.S.C. § 1446, a defendant must remove a case within 30 days after receiving from the plaintiff a paper making clear that there is federal jurisdiction. If the case stated by the

complaint is removable, the defendant generally must remove within 30 days after service of the complaint. *Id.* § 1446(b)(1). If the case stated by the complaint is not removable, the defendant must remove within 30 days after receiving "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3).

But those two 30-day periods are not "the exclusive authorizations of removal." *Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 147 (2d Cir. 2014). Section 1446(b)(1) and (3) impose time limitations on removal "*only* in cases in which the plaintiff's initial pleading or subsequent document has explicitly demonstrated removability." *Id.* If the plaintiff has not provided the defendant a document that makes the basis for removal clear, the defendant is "free to conduct its own investigation and remove" a federal officer case at any time. *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 286 (6th Cir. 2016); *see McLaren v. UPS Store Inc.*, 32 F.4th 232, 241 (3d Cir. 2022); *Cutrone*, 749 F.3d at 146-48; *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 825-26 (7th Cir. 2013); *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013); *see also Romulus*, 770 F.3d at 80 n.12 (noting "agree[ment]" on this issue among circuits).

Here, "there is no dispute that the case stated by the initial complaint" did not start the 30-day removal period. Add. 28. The complaint did not allege that any of the at-issue natural resources were cross-contaminated

by PFAS from both MilSpec AFFF and non-AFFF sources.  3M therefore removed the case only after conducting its own investigation to uncover cross-contaminated natural resources.  The three documents that the district court cited could not have started the 30-day removal period.  None made it unequivocally clear that natural resources at issue in this case were cross-contaminated.  Further, two of the documents are from another case and do not qualify as "other paper" under 28 U.S.C. § 1446(b)(3).

## A.    3M Removed The Case After Uncovering Facts Supporting Federal Officer Jurisdiction.

The complaint here alleged that natural resources "in locations throughout New Hampshire" were contaminated by PFAS.  A59 ¶ 74; A61 ¶ 90.  But the complaint did not allege that any of that contamination was from "overlap[ping] . . . MilSpec AFFF and non-AFFF sources."  Add. 28. Nor did the complaint "connect 3M's supply of AFFF to any military sites in New Hampshire."  *Id.*  Thus, the complaint did not make clear that there is federal officer jurisdiction.  *Id.*

3M later undertook its own investigation of whether there are particular natural resources in New Hampshire that were plausibly cross-contaminated by PFAS from MilSpec AFFF and non-AFFF sources.  *See* A52-54 ¶¶ 29-34.  3M consulted PFAS inspection reports on military and non-military sites (A223, A320, A322, A336, A549); water discharge permits and

water flow reports (A505, A636); and a peer-reviewed article on the distribution of PFAS in wastewater in New Hampshire (A537). Those sources provided a plausible basis to conclude that there are at least two bodies of water at issue in this case with PFAS contamination from both MilSpec AFFF and non-AFFF sources. A52-54 ¶¶ 29-34. Thus, "despite the nonfederal cast of the complaint," *Acker*, 527 U.S. at 431, 3M properly removed the case to federal court based on its own investigation into whether there is federal officer jurisdiction.

## B. The Papers Identified By The District Court Did Not Start The 30-Day Removal Period.

The district court erred in holding (Add. 23-35) that 3M's removal of the case was untimely. The court reasoned that there were three documents, each of which was an "other paper" that could have started the removal period under 28 U.S.C. § 1446(b)(3), and that 3M removed the case more than 30 days after receiving those documents. Add. 35.

The court's holding contravenes three basic principles underlying the removal procedure statute. First, to trigger the removal period under 28 U.S.C. § 1446(b)(3), the document must contain facts making it unequivocally clear and certain that the case is removable. A plaintiff's "other paper" starts the removal period only if the defendant could have "ascertained" from the paper "that the case is one which is or has become removable." 28

U.S.C. § 1446(b)(3).  The statute does not define "ascertained," but its ordinary meaning is "to find out or learn with certainty."  *Merriam-Webster*, https://www.merriam-webster.com/dictionary/ascertain.  Courts of appeals thus have consistently held that the onus is on the plaintiff to provide a paper that makes the facts supporting removal "unequivocally clear and certain."  *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1093-94 (9th Cir. 2021) (collecting cases); *see id.* at 1093 (noting that this Court has applied that test "in all but name").

Second, when a court evaluates whether a plaintiff's paper has started the 30-day removal period, "the inquiry begins and ends within the four corners of" that paper.  *McLaren*, 32 F.4th at 236, 239; *see id.* at 239 n.4 (collecting cases).  Under that "bright-line approach," a defendant has "no independent duty to investigate whether a case is removable."  *Romulus*, 770 F.3d at 75.  The plaintiff's paper itself must make the basis for removal unequivocally clear.  To be sure, a defendant cannot bury its head in the sand.  It "must still apply a reasonable amount of intelligence in ascertaining removability" by, for example, "multiplying figures clearly stated in a complaint" to determine the amount in controversy in a Class Action Fairness Act case.  *Romulus*, 770 F.3d at 75 (alterations and internal quotations omitted).  But there is no obligation for the defendant to "investigate beyond" the plaintiff's paper based on "clue[s]" contained therein, *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 696 n.7 (9th Cir. 2005), in search of

"facts giving rise to removability," *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 206 (2d Cir. 2001).

Third, the "other paper" must be a case-related document that the plaintiff provided to the defendant. This Court has been clear that only "the *plaintiffs'* own papers" can qualify as an "other paper" that can start the 30-day removal period. *Romulus*, 770 F.3d at 74; *see Graiser*, 819 F.3d at 284 (explaining that this requirement "limits the court's inquiry to the . . . paper provided *by the plaintiff* to the defendant" (internal quotations omitted)).

And the plaintiff's paper must be "involved in, not external to, the case being removed." *Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 365 (6th Cir. 2015) (internal quotations omitted); *see Wisconsin v. Amgen, Inc.*, 516 F.3d 530, 534 (7th Cir. 2008); *Suttlehan v. MidFirst Bank*, 205 F. Supp. 3d 366, 371 (S.D.N.Y. 2016); *see also* 14C *Federal Practice and Procedure* § 3731 & n.43 ("[D]ocuments not generated within the state litigation generally are not recognized as 'other papers.'"). The term "other paper" is intended to "only address developments within a case, not a document . . . which is separate and apart from the case." *League of Women Voters of Pa. v. Pennsylvania*, 921 F.3d 378, 384 (3d Cir. 2019) (internal quotations omitted). That rule avoids foisting on courts "the difficult and inefficient task of determining what the defendant should have discovered." *Graiser*, 819 F.3d at 285. Instead, the inquiry focuses on the "more administrable" question of whether the factual basis for removal is unequivocally clear on the face

of documents in the case "that the plaintiff has sent to the defendant." *Id.*
at 285.

The district court disregarded those principles in holding that three
documents—the complaint and removal notice in the AFFF Action, and New
Hampshire's initial disclosures in this case—each could have started the 30-
day removal period under 28 U.S.C. § 1446(b)(3).  None of those documents
contained facts making unequivocally clear and certain that this case in-
volves natural resources contaminated by PFAS stemming in part from Mil-
Spec AFFF—which is no surprise in light of the disclaimers in the complaint
and initial disclosures expressly disavowing damages from AFFF.  3M con-
firmed that natural resources at issue were plausibly cross-contaminated
by PFAS from MilSpec AFFF and non-AFFF sources based on an independ-
ent investigation.  Further, the complaint and the removal notice in the
AFFF Action cannot have started the removal period.  They are not docu-
ments from this litigation, and the removal notice was not provided by New
Hampshire to 3M.

### 1. The complaint in the AFFF Action did not start the mandatory removal period.

The district court erred in holding (Add. 24-31) that the complaint in
the AFFF Action started the 30-day removal period.  A complaint from an-
other case cannot start the removal period.  And besides, the complaint in

the AFFF Action did not contain facts making unequivocally clear and certain that natural resources at issue in *this* case were contaminated by PFAS from MilSpec AFFF and non-AFFF sources.

### a. A complaint from another case cannot start the removal period.

Under the bright-line rule discussed above (at 37), only a document from the litigation at hand can qualify as an "other paper" under 28 U.S.C. § 1446(b)(3). The complaint in the AFFF Action thus could not have started the removal period even if it contained the necessary facts demonstrating that this case was removable.

The district court took the extraordinary step (Add. 24-28) of expanding the term "other paper" to encompass documents outside of the litigation. The court reasoned that this case involves "unique circumstances" that favor starting the removal period based on an outside document. Add. 27-28; *see id.* (noting this case and the AFFF Action were filed on the same day, and share factual and legal questions, a plaintiff, a removing defendant, and several attorneys). But examining outside material in search of "unique circumstances" contravenes this Court's "bright-line approach," under which the "exclusive[]" focus is on whether there was "a paper, filed by the plaintiffs, that explicitly specifies" the basis for removal. *Romulus*, 770 F.3d at 76. The district court should not have expanded its inquiry into whether

3M "should have investigated, or . . . should have discovered" information outside the case. *Id.*

Equally problematic, there is no limiting principle to the district court's holding that outside documents start the removal period in "unique circumstances."  Plaintiffs will undoubtedly argue that there are circumstances in which ordinary business records and other non-litigation documents qualify as "other paper" under 28 U.S.C. § 1446(b)(3).  District courts would have to evaluate on a case-by-case basis whether outside documents put the defendant on sufficient notice of removability.  That would have the effect of imposing on defendants an "independent duty to investigate" these records, and would invite the very "[in]efficient, . . . fact-intensive mini-trials" that this Court's "bright-line approach" is designed to avoid.  *Romulus*, 770 F.3d at 75, 76; *see Graiser*, 819 F.3d at 285 (similar).  Indeed, this case exemplifies the peril of triggering the removal period based on documents from outside the litigation.  The whole point of New Hampshire's separate complaint in the AFFF Action was to try to prevent 3M from removing this case.

None of the cases cited by the district court (Add. 26-27) supports expanding "other paper" to include outside documents.  In *Romulus v. CVS Pharmacy, Inc.*, *supra*, this Court interpreted "other paper" to include various types of litigation documents, rather than limiting it to filings formally served on the defendant.  770 F.3d at 78.  But *Romulus* did not suggest that

"other paper" includes documents from another case. The triggering documents in *Romulus* and the other decisions cited by the district court were directly related to the case being removed. *Id.* (correspondence about damages); *Addo v. Globe Life & Acc. Ins. Co.*, 230 F.3d 759, 761 (5th Cir. 2000) (settlement demand); *Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 755 (4th Cir. 1996) (memorandum supporting remand motion).

The district court also cited (Add. 26-27) two decisions holding that, in narrow circumstances, a court order in another case may constitute an "order" under 28 U.S.C. § 1446(b)(3). Those circumstances are where the cases involve the same defendant and the court order "resolve[s] a legal uncertainty concerning the existence of original federal jurisdiction" in the removable case. *Amgen*, 516 F.3d at 534 (discussing *Green v. R.J. Reynolds Tobacco Co.*, 274 F.3d 263 (5th Cir. 2001), and *Doe v. Am. Red Cross*, 14 F.3d 196, 202-03 (3d Cir. 1993)).

But neither *Green* nor *Doe* opined on the meaning of "other paper" under 28 U.S.C. § 1446(b)(3), much less drew into question this Court's bright-line approach. *See Hannah v. Schindler Elevator Corp.*, No. 3:09-cv-353, 2010 WL 143757, at *3-5 (W.D.N.C. Jan. 8, 2010) (making this point in holding that "discovery from a closely related—albeit separately filed—case" is not an "other paper"). Nor did the outside orders in *Green* and *Doe* supply the missing facts demonstrating removability, which is what the district court held that the complaint in the AFFF Action did here. *See* Add. 31.

42

Rather, they considered only the narrow question of whether a binding decision involving the same defendant that resolved a purely legal question was an "order" under 28 U.S.C. § 1446(b)(3).  *See Green*, 274 F.3d at 268 (Labeling Act preempts claims against tobacco manufacturers); *Doe*, 14 F.3d at 198 (defendant's charter conferred original federal jurisdiction over suits against it).

The Third Circuit has since held that *Doe* is "limited to the unique circumstances that arose in that case" and that 28 U.S.C. § 1446(b) "only address[es] developments within a case."  *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 210-11 (3d Cir. 2014) (internal quotations omitted).  Other circuits likewise have explained that *Green* and *Doe* "limited their holdings to the unusual circumstances presented in those cases." *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 970 (8th Cir. 2007); *see Amgen*, 516 F.3d at 534 (similar).

### b. The complaint in the AFFF Action did not contain facts making clear that this case was removable.

Even if outside documents could theoretically start the removal period, the complaint in the AFFF Action would not have done so.  The complaint did not make "unequivocally clear and certain" that there are specific natural resources at issue in *this* case that were contaminated by PFAS from MilSpec AFFF.  *Dietrich*, 14 F.4th at 1093.  Like the complaint in this

case, that complaint in the AFFF Action generally alleged that natural resources in New Hampshire were contaminated by PFAS. A106 ¶ 2; A125 ¶ 156; A166 ¶ 2; A191 ¶ 205. But neither complaint alleged that natural resources were cross-contaminated by PFAS from MilSpec AFFF and non-AFFF sources, much less identified any specific natural resources where cross-contamination occurred.

The district court nonetheless held that the complaints made "clear . . . that there was overlap in the areas of contamination." Add. 31; *see* Add. 28 (holding that the complaints "clearly and unequivocally stated sufficient facts" for removal). Yet the court cited no specific language in the complaints alleging that natural resources at issue in this case were contaminated by PFAS from MilSpec AFFF. And 3M had "no duty . . . to investigate or to supply facts" regarding sources of PFAS contamination that were not alleged within the four corners of the complaints. *Romulus*, 770 F.3d at 75.[7]

The district court's holding is especially dubious considering that New Hampshire itself has contended repeatedly that the lawsuits do *not* involve overlapping sites. Before the JPML, New Hampshire moved to vacate the

---

[7]   The district court also cited statements made by the judge and plaintiff's counsel at state court hearings, which ostensibly showed that "the cases involved statewide contamination." Add. 29 (citing A669, A697). Even if that were true, it still would not have made removability unequivocally clear because those statements did not assert that there are cross-contaminated natural resources, much less identify those natural resources.

order conditionally transferring this case to the AFFF multidistrict litiga-
tion.  In support, it argued that this case and the AFFF Action "do not in-
volve the same contaminated groundwater" and that "[t]here is no overlap
between" the site lists from its initial disclosures in this case and its fact
sheet in the AFFF Action.  Vacatur Motion at 13, AFFF Litig., ECF No.
1453-1.  The JPML relied on that argument in declining to transfer this case
to the AFFF multidistrict litigation.  *See* Transfer Vacatur, AFFF Litig.,
ECF No. 1511.  It is difficult to see how it could have been "clear from the
[complaints] that there was overlap in the areas of contamination," Add. 31,
when New Hampshire argued that there was *no* overlap and a panel of
judges concluded that the overlap was not sufficiently "obvious . . . to war-
rant transfer of the State's non-AFFF action," Transfer Vacatur at 2, AFFF
Litig., ECF No. 1511; *see id.* at 2 (discussing the "different contamination
sites" that New Hampshire identified in this case and the AFFF Action).

The district court also erred in holding (Add. 29-31) that it was incon-
sistent for 3M to argue that New Hampshire could not frustrate federal ju-
risdiction by disclaiming damages from AFFF while also "rel[ying]" on the
disclaimer to support its argument that removal was timely.  Add. 29.  It is
true that 3M "always" could have argued that the disclaimer was "ineffec-
tive to defeat removal."  *Id.*  But the ineffectiveness of the disclaimer is im-
material to the question of whether the complaint contained the necessary
facts to make removability clear, thereby triggering the mandatory removal

45

period under 28 U.S.C. § 1446(b)(3).  In opposing remand, 3M discussed the disclaimer simply to provide additional context for why the complaint in this case did not make removability clear:  New Hampshire was doing everything it could *not* to discuss AFFF.  As 3M explained, it is unsurprising that the complaint did not make clear that the natural resources at issue were cross-contaminated when New Hampshire expressly disavowed damages from AFFF.  *See* Remand Opp. 10.  3M removed the case only after "conduct[ing] its own investigation" to connect the dots between certain at-issue natural resources and MilSpec AFFF.  *Graiser*, 819 F.3d at 286.

Finally, were there any doubt as to whether the complaint in the AFFF Action provided the requisite facts, the Court should construe the timeliness requirement in favor of removal.  Courts construe the federal officer removal statute, 28 U.S.C. § 1442, "liberally . . . to give full effect to [its] purposes."  *Colorado v. Symes*, 286 U.S. 510, 517 (1932).  That is because "the right of removal is absolute for conduct performed under color of federal office."  *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981).  And courts "extend section 1442's liberal interpretation to section 1446" when "the timeliness of a federal officer's removal is at issue."  *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006).  That rule advances the policies embodied in the federal-officer removal statute, including "safeguarding officers and others acting under federal authority," *Symes*, 286

46

U.S. at 517, and ensuring "a federal forum in which to assert federal immunity defenses," *Watson*, 551 U.S. at 150.

### 2. The removal notice in the AFFF Action did not start the mandatory removal period.

The district court next held (Add. 31-32) that 3M's notice of removal in the AFFF Action "trigger[ed] . . . the 30-day clock" to remove this case because the basis for removing both cases is the same. Add. 35. But that document could not start the removal period. It was not filed by the plaintiff and it is from outside the litigation. Under this Court's bright-line rule, the removal period in "Section 1446(b)(3) does not apply until removability can first be ascertained from the *plaintiffs'* own papers." *Romulus*, 770 F.3d at 74. And as explained above, outside documents cannot start the removal period. The Court should reverse on these bases alone.

Regardless, the district court was incorrect that the "factual basis . . . is the same" for removing the lawsuits, and that the removal notice in the AFFF Action therefore included the facts necessary to trigger the removal period here. Add. 32. In the AFFF Action, the complaint expressly alleged that 3M sold AFFF to the military, that the military used that AFFF at specific facilities in New Hampshire, and that PFAS from use of AFFF at military facilities impacted natural resources in New Hampshire. A167 ¶ 10; A178 ¶ 91; A191 ¶ 204; A195 ¶ 239. 3M's removal notice therefore cited those allegations to show that the AFFF Action plausibly relates to

47

MilSpec AFFF.  *See* Removal Notice ¶¶ 18-22, New Hampshire v. 3M Co., D.N.H. 1:19-cv-800 (July 31, 2019), ECF No. 1.

But to remove this case on federal officer grounds, 3M had to rely on additional information not contained in the complaint.  Here, New Hampshire seeks damages purportedly caused by non-AFFF sources of PFAS and has disavowed damages from AFFF.  A53-54 ¶ 34; A58 ¶ 74.  New Hampshire repeated that disclaimer in its initial disclosures and emphasized that its non-exclusive site lists excluded sites contaminated by PFAS from AFFF sources.  A143-44.  To show that the case nonetheless relates to MilSpec AFFF, 3M conducted its own investigation to identify specific natural resources in New Hampshire that plausibly were contaminated by PFAS from both MilSpec AFFF and non-AFFF sources.  *See* A32-35 ¶¶ 29-34.  3M therefore removed the case only after reviewing factual information outside the complaint to identify bodies of water that were cross-contaminated.  *See* A32-34 ¶¶ 30-33.

Although the removal notice in the AFFF Action did discuss "3M's supply of MilSpec AFFF at Pease Air Force Base," Add. 32, that alone did not provide the facts necessary to start the removal period in this case.  3M still had to investigate whether any natural resources were contaminated by PFAS both from MilSpec AFFF used at Pease Air Force Base and from non-AFFF sources.  *See* A32-34 ¶¶ 30-32.  3M removed the case only after

reviewing PFAS inspection reports, water discharge permits, and a scientific article on PFAS distribution, which supported the argument that Great Bay and Piscataqua River were cross-contaminated. *Id.* But 3M had "no duty . . . to investigate or to supply" those facts. *Romulus*, 770 F.3d at 75. Thus, even if the removal notice in the AFFF Action could qualify as an "other paper," it still did not supply the necessary facts to start the removal period in this case.

### 3. New Hampshire's initial disclosures did not start the mandatory removal period.

The district court likewise was incorrect to hold (Add. 33-34) that New Hampshire's initial disclosures in state court supplied the necessary facts to start the removal period under 28 U.S.C. § 1446(b)(3). Nothing in those disclosures made it unequivocally clear that natural resources at issue in this case were contaminated by PFAS from MilSpec AFFF in addition to PFAS from non-AFFF sources. If anything, the disclosures sought to obscure that fact. Like the complaint, the disclosures stated that New Hampshire "is not seeking recovery for AFFF-related contamination." A143. The disclosures included a non-exclusive list of sites where New Hampshire had identified "PFAS impacts." A144. But New Hampshire was careful to "exclude" from that list "all sites with contamination known or suspected to be attributable to AFFF." A144. Those statements were designed to try to prevent 3M from removing the case on federal officer grounds, not to clearly

and unequivocally "put [3M] on notice of the matter's removability." *Romulus*, 770 F.3d at 80 n.11.  And after supplying that list, New Hampshire argued before the JPML that this case and the AFFF Action "do not involve the same contaminated groundwater."  Vacatur Motion at 13-15, AFFF Litig., ECF No. 1453-1.

The district court nonetheless held (Add. 33) that 3M should have inferred from the site list that the case was removable.  The court reasoned that 3M could have "easily determine[d]" that this case relates to MilSpec AFFF based on the following:  One of the sites on the list is "near" Pease Air Force Base, which is referenced in the complaint in the AFFF Action; the complaints generally allege that PFAS migrates long distances and that there is PFAS contamination in tidal estuaries; and "a large, well-known tidal estuary—the Great Bay—directly abuts Pease Air Force Base." Add. 33.  To begin with, the court should not have relied on the complaint in the AFFF Action, which, again, is not an "other paper" in this case.  28 U.S.C. § 1446(b)(3).  Besides, neither the site list nor the complaints so much as mentions Great Bay, let alone clearly and unequivocally asserts that Great Bay was contaminated by PFAS from MilSpec AFFF and non-AFFF sources.

The court reckoned that 3M only needed to apply a "reasonable [amount] of intelligence" to uncover those facts.  Add. 33 (quoting *Cutrone*,

749 F.3d at 143).  But that is not how the duty to apply reasonable intelligence works.  It simply requires defendants to "read[] . . . a plaintiff's complaint" and other papers in a rational way.  *Cutrone*, 749 F.3d at 145; *see Romulus*, 770 F.3d at 81 (similar).  It is not a requirement "to look beyond [those papers] for facts giving rise to removability."  *Cutrone*, 749 F.3d at 143.  And that is exactly what 3M had to do here.  Neither New Hampshire's complaint nor its initial disclosures identified *any* natural resources contaminated with PFAS from MilSpec AFFF.  3M had to look outside those papers to identify Great Bay and the Piscataqua River as locations where there plausibly was PFAS contamination from MilSpec AFFF and non-AFFF sources.  *See* A32-34 ¶¶ 29-33.

The Ninth Circuit recently confronted a similar situation in *Orange County Water District v. 3M Co.*, No. 21-55778, 2022 WL 605630 (9th Cir. Mar. 1, 2022), and it held that 3M properly removed the case based on its own investigation of the facts.  There, the district court held that the removal period started when a footnote in a co-defendant's brief identified military installations in Orange County as "potential sources of the environmental contamination at issue."  *Id.*  The Ninth Circuit reversed because the footnote did not "clearly and unequivocally reveal[]" that use of AFFF at those facilities was a source of the alleged PFAS contamination.  *Id.*  Likewise, the initial disclosures in this case did not identify any military installations as potential sources of PFAS contamination.  Nor did they allege any

51

locations cross-contaminated by PFAS from MilSpec AFFF and non-AFFF sources. Indeed, the initial disclosures disclaimed all "recovery for AFFF-related contamination." A143.

The district court distinguished *Orange County* because the complaint in this case "alleged contamination cover[ing] the whole of New Hampshire, including certain military sites." Add. 34. But that does not solve the problem. No document that New Hampshire provided in this case put 3M on notice that specific natural resources in New Hampshire were cross-contaminated by PFAS from MilSpec AFFF and non-AFFF sources. As in *Orange County*, New Hampshire's documents drew no connection between MilSpec AFFF and the contamination at issue. Rather, they generally alleged statewide harm from PFAS contamination, disclaimed damages from AFFF, and compiled a list of contamination locations that "exclude[d] all sites with contamination known or suspected to be attributable to AFFF." A144; *see* A48 ¶ 2; A53-54 ¶ 34; A59 ¶ 74. That did not make unequivocally clear that the case is related to MilSpec AFFF. And as discussed above (at 46-47), any doubt as to whether a plaintiff's paper provided the requisite facts should be construed in favor of removal.

### C. Adopting The District Court's Interpretation Would Have Consequences That This Court Has Sought To Avoid.

This case illustrates the problems that arise if statements crafted to avoid federal jurisdiction can start the removal period under 28 U.S.C.

§ 1446(b)(3).  None of the documents cited by the district court alleged that the natural resources at issue in this case were contaminated by PFAS from MilSpec AFFF.  In fact, New Hampshire went out of its way to emphasize that its site list "excludes all sites with contamination known or suspected to be attributable to AFFF."  A144.  And New Hampshire told the JPML that this case and the AFFF Action involve no overlapping sites.  Vacatur Motion at 13-15, AFFF Litig., ECF No. 1453-1.

Were 3M required to remove based on ambiguous statements by a plaintiff attempting to insulate its case from a federal forum, then defendants would have no choice but to "protectively remove when faced with an indeterminate" paper so as not to risk waiving the right to federal court. *Romulus*, 770 F.3d at 75.  That would present defendants with the "intractable dilemma of either risking Rule 11 sanctions for noticing removal without making an adequate inquiry or foregoing removal altogether."  *Harris*, 425 F.3d, at 697 n.11.  It would also result in "fact-intensive mini-trials" over whether the pleadings or other plaintiff papers contained a sufficient clue to require removal.  *Romulus*, 770 F.3d at 76; *see Dietrich*, 14 F.4th at 1094 (seeking to avoid such "collateral litigation").

For that reason, this Court has interpreted 28 U.S.C. § 1446(b)(3) in a way that prevents plaintiffs from strategically starting the removal period without clearly "put[ting] the defendant on notice that the criteria for re-

moval are met," and that encourages plaintiffs to speak with candor regarding their claims "early in litigation." *Romulus*, 770 F.3d at 75, 78. That requires plaintiffs to "assume the costs associated with their own indeterminate pleadings," *Cutrone*, 749 F.3d at 144, but it also empowers plaintiffs to "protect themselves" from defendants that "might delay filing a notice of removal" by providing "a document from which removability may be ascertained," *Graiser*, 819 F.3d at 286.

But plaintiffs will be less likely to provide a thorough account if there is a potential windfall for obscuring or concealing the nature of the case. The Court should not interpret 28 U.S.C. § 1446(b)(3) in a manner that encourages plaintiffs to lead defendants astray. Such a rule would transform the statute from a shield for plaintiffs to "protect themselves" from strategic removals, *Roth*, 720 F.3d at 1126, into a sword for plaintiffs to purposely obfuscate in the hopes that the defendant will miss some fact that triggers the mandatory removal period. And that is precisely what New Hampshire has done in this case. It has consistently disavowed damages caused by PFAS that came from AFFF, only to argue in support of remand that 3M's removal was untimely and that 3M should have known all along that the case relates to MilSpec AFFF. The Court should not reward such an approach—which contravenes Congress's decision to authorize the removal of federal officer cases—much less adopt a rule that encourages it.

## CONCLUSION

The Court should reverse and remand with instructions that the district court recall its remand to state court.

Dated:  July 11, 2023

Respectfully submitted,

/s/ *Michael A. Scodro*

Joseph A. Foster
  1st Cir. Bar. No. 122758
Mark C. Rouvalis
  1st Cir. Bar. No. 80343
MCLANE MIDDLETON
900 Elm Street
Manchester, NH 03101
(603) 625-6464
joe.foster@mclane.com
mark.rouvalis@mclane.com

Michael A. Scodro
  1st Cir. Bar No. 1207763
Avi M. Kupfer
  1st Cir. Bar. No. 1177771
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
mscodro@mayerbrown.com
akupfer@mayerbrown.com

*Counsel for Appellant 3M Company*

**ADDENDUM**

## ADDENDUM TABLE OF CONTENTS

Order, *State of New Hampshire v. 3M Co.*, 22-cv-00145 (D.N.H.
   Mar. 29, 2023), ECF No. 101 ............................................................Add. 1

28 U.S.C. § 1442 ...................................................................................Add. 37

28 U.S.C. § 1446 ...................................................................................Add. 39

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

State of New Hampshire

     v.
                            Civil No. 22-cv-145-LM
                            Opinion No. 2023 DNH 032 P

3M Company, et al.

## **O R D E R**

In late May 2019, the State of New Hampshire filed this parens patriae[1] suit in state court against 3M Company, E.I. DuPont de Nemours & Company, and The Chemours Company alleging claims for negligence, defective design, failure to warn, trespass, and violating the public trust.[2] The State alleges that the defendants supplied products containing certain per- and polyfluoroalkyl substances, which are commonly known as PFAS or PFAS compounds, in New Hampshire.[3] The State asserts that the defendants knew or should have known that PFAS compounds,

---

[1] A parens patriae suit involves "a matter of sovereign or quasi-sovereign interest" and is brought by a state on behalf of all its citizens. 72 Am. Jur. 2d States, Territories, and Dependencies § 94.

[2] After filing its initial complaint, the State filed an amended complaint which added defendants Corteva, Inc., and DuPont de Nemours, Inc., and claims accusing defendants of engaging in what amounts to a fraudulent corporate shell game to avoid or minimize potentially significant liability. The state court later dismissed the State's trespass and public trust claims, so those claims are no longer at issue in this suit.

[3] For the reader's ease, the court uses "PFAS" and "PFAS compounds" as shorthand to refer to the several different chemical substances at issue in this suit, which include perfluorooctansulfonic acid ("PFOS"); perfluorooctanoic acid ("PFOA"); perfluorononanoic acid ("PFNA"); and perfluorohexanesulfonic acid ("PFHxS"); as well as those compounds' chemical precursors.

when released into the environment, migrate long distances through soil, groundwater, and air, and they do not decompose through natural processes. The State alleges that PFAS contamination has occurred statewide, meaning throughout New Hampshire's natural resources, including the entire state's soil, groundwater, surface water, and wildlife.

On April 29, 2022, three years after the State began this suit, 3M removed it under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). 3M asserts that removal jurisdiction exists under § 1442(a)(1) because some of the contamination at issue in this suit plausibly overlaps with, or has commingled with, PFAS contamination from products known as Aqueous Film-Forming Foams ("AFFF") that 3M supplied to the United States military per a military-created specification ("MilSpec AFFF").

The State moves to remand (doc. no. 12), asserting, among other arguments,[4] that 3M has not met the requirements for removal jurisdiction under § 1442(a)(1) because the State disclaimed in this suit any recovery for PFAS contamination from AFFF products. The State also contends that 3M did not timely remove this suit under 28 U.S.C. § 1446(b), which creates a 30-day clock for removal that begins when the removing defendant can first ascertain a case's removability.

---

[4] The State also contends that sovereign immunity precludes removal jurisdiction and that 3M's asserted federal contractor immunity defense is not colorable. Because the court agrees with the State's arguments under 28 U.S.C. §§ 1442(a)(1) and 1446(b), the court need not address these two additional arguments.

Add. 2

3M objects, arguing that the State's disclaimer is legally ineffective and reiterating its position that some contamination at issue in this suit plausibly overlaps with contamination from AFFF it produced for the United States military. 3M argues that its removal was timely because it only recently learned that this suit involved statewide contamination or that a plausible overlap in contamination exists.

The State's motion to remand is granted for two reasons. First, 3M has failed to show that the requirements for removal jurisdiction under § 1442(a)(1) are met. The State disclaimed in this suit recovery for harm from AFFF contamination, which eliminates any connection between the State's claims in this suit and 3M's production of MilSpec AFFF. Second, 3M's removal was untimely because the State broadly pleaded this statewide contamination suit from the outset, and the State clearly and unambiguously alleged facts from which 3M could have easily determined that some contamination at issue in this suit plausibly overlaps with contamination from AFFF it produced for the United States military. After summarizing the background facts, the court addresses both arguments.

## STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction, and they "possess only that power authorized by Constitution and statute." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). When a case is first brought in a state court, a defendant has the right to remove the case to federal court if it can show some

3

Add. 3

basis for federal jurisdiction. Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999). A defendant must remove a case within 30 days of when the grounds for removal can be first ascertained. See 28 U.S.C. § 1446(b).

In this case, 3M asserts that this court has jurisdiction under the federal officer removal statute, § 1442(a)(1), which "allows private actors 'acting under' color of federal authority to remove a state-court action 'for or relating to any act under color of such office.'" Rhode Island v. Shell Oil Prods. Co., LLC, 35 F.4th 44, 53 n.6 (1st Cir. 2022) (quoting § 1442(a)(1)). If a plaintiff files a motion to remand, the defendant shoulders the burden of showing that federal jurisdiction exists and that removal was proper. See Fayard v. Northeast Vehicle Servs., LLC, 533 F.3d 42, 48 (1st Cir. 2008).

## BACKGROUND

I.   <u>The State files parallel lawsuits against 3M on the same day.</u>

On May 29, 2019, the State of New Hampshire filed this suit against 3M and several other defendants in Hillsborough County Superior Court. The same day that it filed this suit, the State filed a second lawsuit in the same court against 3M, DuPont, and others making virtually identical allegations of harm from PFAS contamination. From the inception of this litigation, 3M and the State have been represented by the same lead counsel in both cases.

In both lawsuits, the State alleged that 3M supplied products containing PFAS compounds in New Hampshire when 3M knew or should have known that PFAS compounds are harmful to the environment and public health. And, in both

suits, the State alleged that 3M's supply of substances containing PFAS has caused harmful, statewide contamination of New Hampshire's natural resources—including its soil, groundwater, surface water, and wildlife.

The one material difference between the two suits is that the State's other lawsuit relates only to PFAS contamination from AFFF.  The court refers to the other suit as the "AFFF Suit."

By contrast, in this suit the State expressly disclaimed any recovery for contamination caused by AFFF.  This suit relates only to PFAS contamination from sources <u>other than</u> AFFF.

Setting out this distinction, the initial complaint in this case alleged:

> Through this action, the State is not seeking damages, remediation, restoration or any other relief with respect to any contamination related to Aqueous Film-Forming Foam, which is a specialized category of products that contain PFAS compounds, as that is the subject of a separate action.

Doc. no. 1-3. ¶ 29.  Similarly, in the AFFF Suit, the State alleged that:

> Through this action, the State is not seeking damages, remediation, restoration or any other relief with respect to any contamination from [PFAS] that is not related to the manufacture and use of AFFF, as damages from those compounds that are not from the manufacture and use of AFFF are the subject of a separate action.

Doc. no. 1-5 ¶ 29.  The State has maintained this line between AFFF and non-AFFF contamination throughout the course of both this suit and the AFFF Suit.

A.    <u>Facts alleged in the initial complaint in this lawsuit.</u>[5]

The State alleged in the initial complaint in this suit that PFAS compounds

produced by 3M have been essentially ubiquitous throughout the State, as 3M was

the "primary manufacturer of PFAS chemistry in the United States" for the last 70

years and products with PFAS "have been used for decades in industrial settings"

and "in the production of household and commercial products that are heat

resistant, stain resistant, long lasting, and water and oil repellant."  Doc. no. 1-3

¶¶ 40, 65.

PFAS compounds have "characteristics that cause extensive and persistent

environmental contamination."  <u>Id.</u> ¶ 42.  In particular, PFAS compounds are

"bioaccumulative as well as mobile," meaning that they "are readily transported

through the air as well as the soil and into groundwater where they can migrate

long distances."  <u>Id.</u> ¶ 45.  PFAS compounds "do not readily biodegrade or

chemically degrade in the environment or in conventional treatment systems for

drinking water or wastewater."  <u>Id.</u> ¶ 46.  And they are "difficult and costly to

remove from soil and water."  <u>Id.</u> ¶ 49.

In the initial complaint as well in its amended complaints, the State broadly

alleged that 3M's supply of PFAS has led to contamination of New Hampshire's

"natural resources," which was defined to include, among other items, "the ocean

---

[5] The court reviews the facts as they were alleged in the initial complaint because whether 3M timely removed this suit depends on when the State first informed 3M of the facts supporting removability.  The facts alleged in the State's amended pleadings, as they are relevant to the issues in this order, are largely the same.

and its tidal estuaries," "streams, rivers, lakes, [and] ponds," as well as "all land . . .
owned, managed, held in trust, or otherwise preserved or protected by the State."
Doc. no. 1-3 ¶ 2.  The State alleged that PFAS compounds supplied by 3M have
accumulated in New Hampshire's soil, groundwater, surface water, and wildlife
including birds and game.  E.g., id. ¶¶ 156, 172, 179, 188.  The State alleged that
contamination has occurred statewide, meaning that the State wants to recover in
this action damages for contamination throughout the entire state, rather than in
one or several discrete geographic locations.  E.g., id. ¶ 11 ("PFAS has impacted
groundwater above current standards in every county in the State."); id. ¶ 14
("Defendants' manufacture, distribution, and sale of [PFAS] has caused, and
continues to cause, widespread injury to the State's groundwater and surface water,
fish, wildlife, marine resources, and other natural resources, as well as its
citizens."); id. ¶ 156 ("[PFAS compounds] have been found in soil, groundwater,
surface water, sediments, fish, wildlife, marine resources, biota, and other natural
resources in locations throughout New Hampshire.").  The initial complaint does not
exclude any location in New Hampshire from this lawsuit's scope, only damage
caused by AFFF.

B.    Facts alleged in initial complaint in the AFFF Suit.

The State's initial complaint in the AFFF Suit contained similar allegations
as its initial complaint in this case.  In addition to its allegations about the harm
caused by PFAS and the scope of the lawsuit (also statewide and covering the
entirety of New Hampshire's "natural resources"), the State specifically alleged that

7

3M had supplied AFFF to the United States military in New Hampshire, noting, for example, that "[f]rom the 1960s through 2001, the United States Department of Defense purchased AFFF exclusively from 3M and Tyco/Ansul." Doc. no. 1-5 ¶ 91. Furthermore, the State identified "the Pease Air Force Base in Newington [New Hampshire]; . . . [and] the New Boston Air Force Station Former Fire Department" as locations (among others) at which 3M had supplied AFFF that had contaminated the state's natural resources. Id. ¶ 10.

II.    3M removes the AFFF Suit to federal court.

In late July 2019, 3M removed the AFFF Suit to federal court under the federal officer removal statute, § 1442(a)(1). State v. 3M, Case No. 19-cv-800-JD, ECF doc. no. 1. In its notice of removal in the AFFF Suit, 3M asserted that the court had removal jurisdiction under § 1442(a)(1) because at least some of the PFAS contamination for which the State sought to hold 3M liable resulted from 3M's production of MilSpec AFFF—that is, AFFF that 3M produced for the United States military under a military specification. Id. at 8. In particular, 3M observed that "[p]laintiff's own allegations confirm that its alleged injuries arise in part from the use of MilSpec AFFF at military sites in New Hampshire and that 3M and the other Defendants were 'acting under' federal officers of the Department of Defense and its agencies when manufacturing MilSpec AFFF." Id. At that time, 3M also detailed its knowledge of the history of MilSpec AFFF, its supply of MilSpec AFFF to the United States military, and its disclosure of and the government's knowledge of the potential dangers of AFFF.

Add. 8

The State did not contest removal of the AFFF Suit.  Soon after 3M removed the AFFF Suit, the Judicial Panel on Multidistrict Litigation transferred the AFFF Suit to the District of South Carolina for participation in the AFFF multidistrict litigation ("MDL"), In re Aqueous Film-Forming Foams Products Liability Litigation, MDL No. 2874 (D.S.C.).

III.    3M moves to change venue from Hillsborough County to Merrimack County.

Although it removed the nearly identical AFFF Suit, 3M continued to litigate this suit in state court.  In October 2019, 3M moved to change venue, arguing that venue of this suit was improper in Hillsborough County.  3M contended that the proper venue for the suit was Merrimack County because the State's allegations "form the basis of a transitory action, as they 'have no locality,'" and "the purported harm to birds, fish, rivers, streams, and other natural resources is not alleged to be local or fixed to any one geographic location; the Complaint contemplates a harm that is transitory, sporadic in nature, and crosses county borders."  Doc. no. 12-3 at 4; id. at 5 ("The alleged environmental contamination caused by the Defendants could have—and allegedly has—arisen throughout the State . . . .").  Likewise, during a February 2020 hearing on the motion, 3M observed that the State's claims were "sweeping statewide claims," noting in particular 3M's understanding (based on the complaint) that the State's claims included not only "land" but also "things that move" such as wildlife and "[r]ivers, brooks, streams, [and] things that are not in one location . . . ."  Doc. no. 12-4 at 4.

In June 2020, the superior court (Nicolosi, J.) found that venue was improper in Hillsborough County and transferred the case to Merrimack County Superior Court.  See RSA 507:9 (fixing venue in "transitory actions" to the "county or judicial district" in which an in-state party resides); State v. Cote, 95 N.H. 108, 110 (1948) (stating that the State's principal place of business is the county in which its capital is located).  The superior court found that the complaint alleged a claim "that is effectively universal throughout New Hampshire."  Doc. no. 12-5 at 8.  The court continued, stating that, according to the allegations in the complaint, "[t]he invasion of PFAS has not targeted one county, or even distinct contiguous land in multiple counties.  Rather the contamination is so pervasive that the complaint makes no attempt to even identify any specific property upon which defendants have trespassed."  Id.  Further, the superior court stated that "these claims . . . have arisen in every county and the claim is more a complaint as to all land in the state."  Id.[6]

---

[6] The defendants also moved to dismiss the State's trespass claim for failure to state a claim.  The court granted defendants' motion in that respect, finding that "the State's allegation of a statewide trespass is too vague . . . as the Court cannot assess which lands have been trespassed upon and whether the State meets the requisite possessory rights for those lands."  Doc. no. 12-5 at 19.  While the State opposed the motion, it did not dispute the characterization of the complaint as alleging harm throughout the entire state.  See doc. no. 12-5 at 6-7 (describing the State's opposition).

IV.    <u>In response to the second amended complaint, 3M alleges a federal contractor immunity defense but does not then remove the lawsuit.</u>

After the state court granted defendants' October 2019 motion, the State filed its first amended complaint, which contained the same substantive factual allegations as the initial complaint.

Defendants then moved to dismiss the amended complaint, arguing that the State's public trust claim failed to state a claim upon which relief could be granted. In April 2021, the state court (Kissinger, J.) held a hearing on the motion to dismiss. Doc. no. 23-7 at 24 (start of transcript); doc. no. 23-8 (transcript continued). During the hearing, the State observed that its substantive allegations were unchanged from the initial complaint and stated that "[t]his case is about widespread contamination of public resources, and the State's drinking water, groundwater, surface water, land, natural resources, including wildlife, and other public properties." Doc. no. 23-8 at 11. The State contended that PFAS compounds are released "into water in the form of liquid," "in powder form," and "by smoke stacks into the air." <u>Id.</u> at 13. The State added that PFAS compounds "can be discharged into waste streams" and "[t]here are numerous pathways by which these compounds are released into the environment, make their way into the natural world, water, land, [and] into public [] drinking water." <u>Id.</u> at 13-14.

The court granted defendants' motion to dismiss the State's public trust claim, and the State subsequently filed a second amended complaint. In October 2021, 3M answered the second amended complaint. In its answer, 3M asserted a federal contractor immunity defense, specifically stating that "[s]ome or all of the

Plaintiff's claims are barred, in whole or in part, because 3M is not responsible or liable for any acts or omissions undertaken by or at the direction of any governmental authority or agency."  Doc. no. 12-11 ¶ 15.  3M, however, did not attempt to remove this suit at that time.

V.    <u>The State produces a non-exhaustive list of locations with PFAS contamination that includes a site near Pease Air Force Base.</u>

On December 17, 2021, the State produced, as part of its initial disclosures, a non-exhaustive list of 244 locations within New Hampshire with PFAS contamination.  That list, which the State noted was limited to sites for which a state agency had opened a discrete investigation file, included locations throughout New Hampshire, but it did not list Pease Air Force Base or any military facility. The list, however, did include a location near Pease Air Force Base, namely, PSNH Schiller Station.

The State acknowledged in its initial disclosures that "there may be references to investigations or sites with connections to the use of" AFFF, but reiterated that, considering its disclaimer for AFFF contamination, any references "should not be construed as indicating that the State seeks recovery in this case for contamination caused in whole or in part by AFFF . . . ."  Doc. no. 1-4 at 2.  The State also asserted that the sites it identified in its initial disclosures "do not represent the location of the harm resulting in the totality of the State's claimed damages."  <u>Id.</u> at 3.

VI.    <u>3M removes this suit under the federal officer removal statute three years after it began and while it was on appeal before the New Hampshire Supreme Court.</u>

The litigation of this suit in state court continued.  In July 2021, the state superior court denied a motion to dismiss two defendants for lack of personal jurisdiction (Corteva and The Chemours Company).  Those defendants appealed the court's denial of their motion to the New Hampshire Supreme Court, which heard oral argument in late February 2022.

Meanwhile, in March 2022, the parties prepared for a case structuring conference before the superior court.  In preparing for the conference, the parties disputed certain discovery issues, and, in particular, the State hotly disputed 3M's request to issue approximately 12,000 interrogatories.  3M's request was premised on its claimed belief that the case would involve 244 trials or "mini-trials"—one for each of the 244 sites listed by the State in its December 2021 initial disclosures.  Thus, 3M asserted, it should be permitted to issue 50 interrogatories for each site on the State's list.

On March 30, 2022, the State responded by reiterating that "[t]his is a state-wide contamination case that will be tried on alternative liability theories, not a site-by-site case requiring 244 mini site-specific trials as 3M suggest[s]."  Doc. no. 1-6 at 4.  The State continued, stating that it had "repeatedly explained" that "the identified sites do not demonstrate the totality of the State's harm.  The State's natural resources, including substantial surface and groundwater resources, are contaminated across the State, and the State is seeking recovery for harm to those resources which cannot be identified in a site list."  <u>Id.</u>

13

On April 29, 2022—30 days after the State's response and nearly three years after the State began this suit—3M removed this suit under § 1442(a)(1) claiming that the State's response was the first time it learned that this suit involved statewide contamination.[7]

## DISCUSSION

The State moves to remand. Among other arguments, the State contends that the court lacks removal jurisdiction under § 1442(a)(1) because, considering the disclaimer for contamination from AFFF, 3M has not shown that a connection exists between the State's claims and 3M's production of MilSpec AFFF. The State also argues that 3M's removal of this suit nearly three years after it began was untimely under 28 U.S.C. § 1446(b), which creates a 30-day clock to remove that begins when the removing defendant can first ascertain removability. The State argues that 3M could have first ascertained the removability of this suit under § 1442(a)(1) no later than December 17, 2021, when the State provided its initial disclosures that referenced sites or investigations with connections to 3M's supply of AFFF. The State thus argues that 3M should have removed the case by mid-January 2022, and its failure to do so requires remand.

3M objects. 3M argues that a connection exists between the State's claims and 3M's supply of MilSpec AFFF because PFAS contamination from MilSpec AFFF has plausibly overlapped or commingled with contamination from other sources. As

_____

[7] The New Hampshire Supreme Court had not issued a ruling at the time of 3M's removal, and it subsequently dismissed the pending appeal.

to timeliness, 3M argues that the State's initial disclosures were insufficient because they did not connect 3M's supply of MilSpec AFFF to any specific location at issue in this suit. Rather, 3M contends that if removal were ever ascertainable, it was only after the State disclosed in late March 2022 that this suit involved statewide contamination. 3M also contends that the State's disclaimer of recovery for AFFF contamination created an ambiguity as to whether the case could be removed.

The court first addresses the parties' arguments as to the existence of removal jurisdiction under § 1442(a)(1), and then discusses their arguments as to timeliness under § 1446(b).[8]

## I.    The Federal Officer Removal Statute

The State first argues that remand is warranted because there is no jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). The court agrees.

The federal officer removal statute, § 1442(a)(1), is a "specialized removal statute" that "allows private actors 'acting under' color of federal authority to remove a state-court action 'for or relating to any act under color of such office.'"

---

[8] Prior to his recusal, Judge Barbadoro held oral argument on the State's motion to remand. The court has reviewed the transcript of oral argument in making this ruling and finds that no further argument is necessary or warranted to aid the court's decision.

Rhode Island, 35 F.4th at 53 n.6 (quoting 28 U.S.C. § 1442(a)(1)).[9]  Removal is

permissible under § 1442(a)(1) if the removing party shows (1) that it "acted under a

federal officer"; (2) that the claims against it are "for" or relate to "the alleged

official authority"; and (3) that it "will raise a colorable federal defense." Id. (citing

Moore v. Elec. Boat Corp., 25 F.4th 30, 34 & n.2 (1st Cir. 2022)).[10]

Congress intended § 1442(a)(1) to provide "broad" removal rights to a

defendant who works with the federal government and asserts a federal defense.

Willingham v. Morgan, 395 U.S. 402, 406 (1969) ("At the very least [§ 1442(a)(1)] is

broad enough to cover all cases where federal officers can raise a colorable defense

arising out of their duty to enforce federal law.  One of the primary purposes of the

removal statute—as its history clearly demonstrates—was to have such defenses

litigated in the federal courts.").  Thus, unlike the general removal provision, which

---

[9] Specifically, § 1442(a)(1) states that a defendant may remove a
state-court action that is against or directed to:

> The United States or any agency thereof or any officer (or
> any person acting under that officer) of the United States
> or of any agency thereof, in an official or individual
> capacity, for or relating to any act under color of such office
> or on account of any right, title or authority claimed under
> any Act of Congress for the apprehension or punishment of
> criminals or the collection of the revenue.

[10] 3M asserts a federal contractor immunity defense.  To prove that defense,
the defendant must establish three elements: "(1) the United States approved
reasonably precise specifications; (2) the equipment conformed to those specifications;
and (3) the supplier warned the United States about the dangers in the use of the
equipment that were known to the supplier but not to the United States." Boyle v.
United Tech. Corp., 487 U.S. 500, 512 (1988).

16

Add. 16

is strictly construed in favor of <u>remand</u>, § 1442(a)(1) is broadly construed in favor of <u>removal</u>. <u>Watson v. Philip Morris Cos. Ins.</u>, 551 U.S. 142, 147-48 (2007).

The requirement that a claim be "for" or "relate to" the alleged federal authority is a "nexus" requirement, but not a causation requirement. <u>Moore</u>, 25 F.4th at 34 & n.2. That is, only a "nexus" between the claims and the alleged official authority need exist; it is sufficient that at least one of the plaintiff's claims is "connected" or "associated" with the defendant's acts under color of federal office. <u>Baker v. Atlantic Richfield Co.</u>, 962 F.3d 937, 943-44 (7th Cir. 2020) (explaining that 2011 amendments to § 1442(a)(1) removed requirement of causal connection and collecting appellate cases holding likewise).

Other federal courts have found that similar, specific limitations on the scope of a plaintiff's claims eliminate a potential relationship between the plaintiff's claims and a defendant's federal acts. For example, in <u>Hayden v. 3M Company</u>, the plaintiff alleged that he suffered from mesothelioma caused by lifetime exposure to asbestos and asbestos-based products produced by 78 different defendants. No. 15-2275, 2015 WL 4730741, at *3-4 (E.D. La., Aug. 10, 2015). However, the plaintiff disclaimed any recovery for injuries resulting from asbestos exposure during his service in the United States Navy. <u>Id.</u>

During a deposition the plaintiff nonetheless testified that two of the named defendants had manufactured a product which enhanced his exposure to asbestos while he served in the Navy. <u>Id.</u> Based on that testimony, one defendant removed the case to federal court under § 1442(a)(1). <u>Id.</u> The plaintiff moved to remand,

17

Add. 17

arguing that the disclaimer precluded federal jurisdiction. Id.  The district court agreed, finding that the disclaimer was like those in other cases in which jurisdiction was found lacking. Id. at *3.  Considering that precedent, the district court found that the disclaimer "eliminates any cause of action related to exposure while [the plaintiff] was in the Navy and the only valid grounds for removal relate to that specific time period."  See id. at *4.

The court lacks removal jurisdiction under § 1442(a)(1) because 3M has not shown that a "nexus" exists between the State's claims in this case and 3M's alleged acts under federal authority.  Like the plaintiff in Hayden, the State has consistently disclaimed any recovery for contamination resulting from 3M's production of AFFF.  That disclaimer is effective and eliminates the connection between the State's broad statewide claims and 3M's production of MilSpec AFFF for the United States military.  See 28 U.S.C. § 1442(a)(1); Batchelor v. Am. Optical Corp., 185 F. Supp. 3d 1358, 1363-64 (S.D. Fla. 2016) (stating that federal courts have "consistently" granted motions to remand in cases where the plaintiff expressly disclaims recovery for the claims on which federal removal is based); Hayden, 2015 WL 4730741, at *3-4; but see Nessel v. Chemguard, Inc., 2021 WL 744683 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in case removed under federal officer removal statute when plaintiff disclaimed recovery for contamination from MilSpec AFFF but not commercially produced AFFF).[11]

---

[11] Courts generally find that non-specific disclaimers which purport to waive all federal claims based on generic, boilerplate language are ineffective.  See

Here, as in <u>Hayden</u>, there is no scenario under which 3M could be found liable for any damages caused by AFFF. That is, regardless of whether 3M's AFFF conformed to a specification required by the United States military or whether 3M appropriately warned the government about the dangers of PFAS, 3M cannot be liable in this case for contamination resulting from its alleged supply of MilSpec AFFF. Doc. no. 12-1 at 10-11 (State's motion to remand) ("Because the State is not making any claims here for injuries from the only product that 3M asserts it supplied at the direction of a federal officer, the validity of that assertion will simply not be tested in this action."). If the evidence, for example, shows that AFFF caused any of the damages in this case, the portion attributable to AFFF would be subtracted from any damages awarded the State. And if no apportionment is possible, no damages could be awarded. 3M would prevail without any need to assert a defense premised on its acts under federal authority. To the extent AFFF is relevant, its presence in the contamination could eliminate recovery for the State—regardless of why or for whom 3M made it. The State's claims are neither "for" — nor do they "relate to" — 3M's actions under federal authority.

---

Batchelor, 185 F. Supp. 3d at 1363 (describing circumstances in which disclaimers are ineffective). 3M does not contend that the State's disclaimer falls within this category of generic disclaimers (i.e., those that disclaim all federal claims without specifying which ones). It is undisputed that the State's disclaimer here, which identifies specific claims against 3M for its production of AFFF, is not such a generic disclaimer.

3M relies primarily on <u>Nessel v. Chemguard, Inc.</u>, to support its position.[12] In <u>Nessel</u>, the court denied remand and found that the requirements of the federal officer removal statute were met when, as here, the plaintiffs (in effect, the State of Michigan) brought parallel PFAS contamination suits against several defendants. <u>Id.</u> at *1. One suit related only to PFAS contamination from commercially produced AFFF, while the second suit related only to MilSpec AFFF.[13] <u>Id.</u> The defendants removed the commercial AFFF suit under § 1442(a)(1), and the plaintiffs moved to remand. Plaintiffs argued, as the State does here, that no "nexus" existed between their claims in the commercial AFFF case and the defendant's acts under official authority. <u>Id.</u>

The district court denied the motion to remand, finding that the record did not make it clear whether injuries from commercial AFFF and MilSpec AFFF "will be distinguishable." <u>Id.</u> at *3. On the contrary, the court stated that the trial court "will likely have to engage in a detailed fact-finding process to determine whether the injuries from MilSpec and Commercial AFFF can be distinguished . . . ." <u>Id.</u> Nor was the record clear in <u>Nessel</u> on whether plaintiffs' harm in fact "occurred from actions taken while Defendants were acting under color of federal office[.]" <u>Id.</u> The court explained that, notwithstanding the plaintiffs' limitation of their case to

---

[12] 3M contends that the Judicial Panel on Multidistrict Litigation "endorsed" the reasoning in <u>Nessel</u> when it transferred that case to the <u>In re AFFF</u> MDL. Doc. no. 39 at 2 n.2. However, the court could find no such endorsement in the documents cited by 3M. <u>See id.</u>

[13] The MilSpec AFFF suit in <u>Nessel</u> was originally filed in federal court.

20

commercial AFFF, "Plaintiffs cannot decide what defense Defendants might present.  Consider, for example, a tort case: a plaintiff can allege that a defendant and only that defendant caused his injury, but a plaintiff cannot prevent a defendant from presenting an alternate theory of causation."  Id.

The instant case is distinguishable from Nessel because the State's two cases here involve AFFF and non-AFFF contamination, rather than contamination from two different kinds of AFFF.  In Nessel, whether an alternate source of contamination was MilSpec AFFF, as opposed to another version of AFFF, was legally significant because the defendants' liability turned on whether the factfinder concluded that the defendant produced the AFFF for the federal government under a military specification.  Here, unlike Nessel, whether an alternate source of contamination was MilSpec AFFF is irrelevant because this suit does not involve AFFF, regardless of whether it is MilSpec or another version of AFFF.

In addition, the court does not find the reasoning of Nessel persuasive.  If the sources of contamination cannot be distinguished, 3M cannot be held liable.  That is, the State will fail to establish its own case, which is premised on the existence of contamination from some non-AFFF source.  And, if a factfinder can distinguish the sources of contamination, 3M will prevail to the extent the factfinder determines contamination came from AFFF.  This is true regardless of whether 3M supplied the AFFF under federal authority or warned the government about its dangers.

In a final attempt to persuade the court that the State's disclaimer is ineffective to defeat removal, 3M points to the inapplicability of the "well-pleaded

complaint rule" in cases removed under § 1442(a)(1).  The well-pleaded complaint rule governs the determination of whether a case arises under federal law for purposes of federal question jurisdiction.  E.g., Rhode Island, 35 F.4th at 51.  The court must make the determination from the face of the plaintiff's complaint — mindful that the plaintiff is "master" of its claims.  Id.  So, in most circumstances, the non-federal cast of a complaint will prevent the defendant from removing it.  Id.  The federal officer removal statute, however, overrides the well-pleaded complaint rule—at least inasmuch as removal jurisdiction under § 1442(a)(1) turns on the defendant's assertion of a colorable federal defense.  See, e.g., Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1253 (9th Cir. 2006).

While 3M is correct that the well-pleaded complaint rule does not apply under § 1442(a)(1), the defendant must still establish that a nexus exists between the "charged conduct and the asserted official authority."  Jefferson Cnty., Ala. v. Acker, 527 U.S. 423, 431 (1999).  Simply asserting a federal defense is not, on its own, sufficient to show removal jurisdiction under § 1442(a)(1).  Rather, § 1442(a)(1) also requires that the plaintiff's claims have a nexus to the defendant's acts under federal authority.  Id.  The nexus does not exist here — for the reasons already explained.

In sum, 3M has not met its burden to show that a nexus exists between the claims in this case and its alleged actions under federal authority.  Therefore, remand is necessary.

II.    Timeliness of Removal.

The State also argues remand is necessary because 3M's removal of this case was untimely under 28 U.S.C. § 1446(b), which requires a defendant to remove a case within 30 days of when its removability can be first ascertained.  The court agrees.

A notice of removal in a civil action "shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ."  28 U.S.C. § 1446(b)(1).  "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  Id. § 1446(b)(3).

In practice, the 30-day clock begins if either one of two conditions exists: (1) the case stated by the initial complaint is removable or (2) subsequent papers allow the defendant to ascertain removability.  See Romulus v. CVS Pharm., Inc., 770 F.3d 67, 72 (1st Cir. 2014) ("We now hold that Section 1446(b)'s thirty-day clocks are triggered only when the plaintiffs' complaint or plaintiffs' subsequent paper provides the defendant with sufficient information to easily determine that the matter is removable.").  Unless the issue is waived, a case removed after the 30-day clock begins and ends must be remanded.  See Universal Truck & Equipment Company, Inc. v. Southworth-Milton, Inc., 765 F.3d 103, 110 (1st Cir. 2014).

"When removability is not clear from the initial pleading," the court "looks to the plaintiffs' subsequent papers" to determine whether or when removability first became ascertainable.  See Romulus, 770 F.3d at 74.  In assessing whether subsequent papers start the 30-day clock, the First Circuit applies a "bright-line approach" that looks to whether the "plaintiffs' pleadings or the plaintiffs' other papers provide the defendant with a clear statement of" the grounds for removal or with "sufficient facts" from which the grounds for removal can be "easily determined."  See id. at 69, 72; accord Dietrich v. Boeing Co., 14 F.4th 1089, 1093 (9th Cir. 2021) (stating that the facts that demonstrate removability must be stated "clearly" and "unequivocally" before 30-day clock begins).

The defendant has "no duty" to "investigate or to supply facts outside of those provided by the plaintiff."  Romulus, 770 F.3d at 75.  At the same time, the defendant must "apply a reasonable amount of intelligence in ascertaining removability."  Id. (quoting Cutrone v. Mortgage Electronic Registration Sys., Inc., 749 F.3d 137, 143 (2d Cir. 2014)).  The use of a "reasonable amount of intelligence" includes considering uncontested information in the record, even if the defendant originally produced the information.  See id. at 79 n.9.

A.    The First Circuit construes the term "other paper" broadly and the initial complaint in the AFFF Suit qualifies.

To determine whether the 30-day clock started under § 1446(b)(3), the court must analyze what is "apparent on (or easily ascertainable from) the face of the plaintiff's pleadings" and "other papers."  Id. at 72-75.  A threshold issue in determining when 3M could first ascertain the removability of this suit is which

24

papers the court may consider, and, in particular, whether documents filed in the AFFF Suit can be considered "other paper" for purposes of triggering the 30-day clock under § 1446(b)(3) in this suit.  Notably, the State's initial complaint in the AFFF Suit fills in several details about 3M's supply of AFFF for the United States military, and the facts alleged in the AFFF Suit underlie 3M's removal of this suit.

Ordinarily, papers filed in one case would not be relevant and could not be considered in ascertaining the removability of another case.  See Wisconsin v. Amgen, Inc., 516 F.3d 530, 534 (7th Cir. 2008) (holding, in a case that did not involve identical parties, that "there can be no removal on the basis of an order or other document in another case" but leaving open the possibility that a case with a "distinguishing feature" might except it from the general rule).  However, under the unique circumstances here, the First Circuit's reasoning in Romulus provides support for considering papers filed in the AFFF Suit.  See 770 F.3d at 77.

In Romulus, the defendant removed the suit under statutes that permit removal of a class-action suit if the amount in controversy exceeds $5,000,000 and other requirements are met.  Id. at 70.  The removal occurred more than 30 days after the filing of the initial complaint.  Id.  The plaintiff moved to remand, and the district court granted the motion on the ground that removal was untimely.  The district court found no basis to trigger the 30 days under § 1446(b)(3).  Id. at 71.

The First Circuit reversed, concluding that § 1446(b)(3) applied because the defendant had received an informal email from plaintiff's counsel which, for the first time, disclosed data to the defendant that was "a very important component" of

its amount-in-controversy calculation.  Id. at 71.  This data, when combined with the plaintiff's pleadings and other data provided by the defendant in an earlier notice of removal, was sufficient for the defendant to "easily determine" the case's removability, thus triggering the 30-day clock for removal.  Id. at 72.  Because the defendant removed the case within that 30-day period, the First Circuit concluded that the defendant's removal was timely under § 1446(b)(3).  Id.

The First Circuit took a practical and common-sense approach to answering the fact-intensive question of what constitutes sufficient notice of removability.  The court interpreted § 1446(b)(3)'s term "other paper" to include documents such as "informal correspondence from the plaintiff to the defendant."  Id. at 78.  Thus, under Romulus, a document need not be formally filed in a case or served on the defendant to be considered an "other paper" for purposes of removal.  Id.  It is more important that the document came from the plaintiff, was received by the removing defendant, and unambiguously revealed facts that affected the removability of the case at hand.  See id. ("We hold that correspondence from the plaintiff to the defendant concerning damages can constitute an 'other paper' for purposes of Section 1446(b)(3)."); 28 U.S.C. § 1446(b)(3) (stating that the 30-day clock begins when the defendant receives "through service or otherwise," inter alia, an "other paper" that first allows it to ascertain removability) (emphasis added).

Where there are multiple cases involving the same defendant, courts have looked to orders issued in those other cases to determine whether information in those orders trigger § 1446(b)(3)'s 30-day clock.  The Fifth and Third Circuits have

held that, in special circumstances, when a defendant which sought removal was a party in an unrelated case and in that case the court issued an "order" that affected the case's removability, the order triggered the 30-day clock under § 1446(b)(3).  See Green v. R.J. Reynolds Tobacco Co., 274 F.3d 263, 267 (5th Cir. 2001) ("[A] decision by a court in an unrelated case, but which involves the same defendant, a similar factual situation, and the question of removal [] can constitute an 'order' under § 1446(b)."); Doe v. Am. Red Cross, 14 F.3d 196 (3d Cir. 1993) (same).  The cases which the First Circuit relied on in Romulus are likewise consistent with this rule.  See Addo v. Globe Life and Acc. Ins. Co., 230 F.3d 759, 761-62 (5th Cir. 2000) ("[O]ther paper must result from the voluntary act of a plaintiff which gives the defendant notice of the changed circumstances which now support federal jurisdiction."); see also Yarnevic v. Brink's, Inc., 102 F.3d 753, 755 (4th Cir. 1996) ("We do not think § 1446(b) requires that the 'motion, order or other paper' be part of the state court record, . . . .  The 'motion, order or other paper' requirement is broad enough to include any information received by the defendant, 'whether communicated in a formal or informal manner.'").

Considering the First Circuit's approach to this question in Romulus, and under the unique circumstances present here, the court finds that certain documents filed in the AFFF Suit qualify as "other paper" sufficient to trigger the 30-day clock under § 1446(b)(3).  There are unique facts in this case that make that finding appropriate.  Specifically, both this suit and the AFFF Suit involve the same plaintiff, the same removing defendant, and the same lawyers; both suits were filed

27

Add. 27

on the same day; they cover largely the same factual and legal issues; and, 3M's basis for its removal of this suit is the alleged inherent link between the claims in this suit and the State's claims in the AFFF Suit.

      B.    <u>Considering the pleadings and other papers that the State provided to 3M, 3M could have first ascertained the removability of this suit more than 30 days before its April 29, 2022 notice of removal.</u>

Here, there is no dispute that the case stated by the initial complaint in this suit, standing on its own, was not removable. While the initial complaint covered contamination statewide, it did not connect 3M's supply of AFFF to any military sites in New Hampshire. Therefore, the court looks to § 1446(b)(3) to determine whether any subsequent papers allowed 3M to ascertain this suit's removability under the federal officer removal statute. See Romulus, 770 F.3d at 72.

3M did not file its notice of removal in this suit until April 29, 2022, so removal was untimely if 3M could first ascertain the removability of this suit under § 1442(a)(1) more than 30 days earlier—i.e., prior to March 30, 2022. See 28 U.S.C. § 1446(b)(3). The initial complaint in this suit, when considered with the initial complaint in the AFFF Suit, clearly and unequivocally stated sufficient facts from which 3M could have easily determined the basis for its removal, which is that there is plausible overlap in PFAS contamination in areas covered by this suit from both MilSpec AFFF and non-AFFF sources. These facts were revealed almost three years before March 30, 2022, so 3M's removal under § 1442(a)(1) was untimely.

3M makes several arguments in response. To start, 3M asserts that the State did not make clear that this suit involved statewide contamination until

March 30, 2022. The record proves otherwise. The initial complaint clearly and
unambiguously alleged that the case involved statewide contamination. That is
enough. But if it were not, the superior court confirmed that 3M's "site-by-site"
viewpoint had no validity in its June 2020 order which described the State's
complaint as broadly alleging harm to "all land in the state." Doc. no. 12-5 at 8.
The State made that point again in its April 2021 oral argument on defendants'
motion to dismiss the public trust claim. Doc. no. 23-8 at 11. The State, of course,
reiterated it one more time on March 30, 2022, but the State repeating what it had
already made clear does not change when removability was <u>first</u> ascertainable by
3M. <u>See</u> § 1446(b)(3).

     3M relies on the disclaimer to support its argument that it could not have
known the case was removable. That is, 3M could not know that the case involved
MilSpec AFFF because the State expressly disclaimed MilSpec AFFF. 3M's basis
for removing this case, however, is that the court should disregard that disclaimer.
And, whether disclaimers like the State pleaded in these cases are sufficient, as a
matter of law, to undermine removal jurisdiction under § 1442(a)(1) has been a
long-running legal question. <u>See, e.g.</u>, <u>Hayden</u>, 2015 WL 4730741, at *4 (disclaimer
effective); <u>Jennings v. Bell Helicopter Textron, Inc.</u>, 2012 WL 12883239, at *4 (S.D.
Cal. Oct. 23, 2012) (finding that disclaimer is ineffective and collecting cases finding
the same). Thus, 3M's argument as to removal jurisdiction under § 1442(a)(1) (i.e.,
the State's disclaimer is ineffective to defeat removal) was always available to 3M.
For that reason, it is not a persuasive basis to delay the start of the 30-day clock

under § 1446(b)(3).  See Dahl v. R.J. Reynolds Tobacco Co., 478 F.3d 965, 970 (8th Cir. 2007) (holding that the removing defendant could "ascertain" removability of a suit under the federal officer removal statute notwithstanding federal courts' competing views about whether federal officer jurisdiction would exist under facts like those in the case).

The Eighth Circuit explained in Dahl that Congress did not intend for § 1446(b) to permit a defendant to delay removal simply because it lacked a definitive legal basis to support removal jurisdiction.  See id.  Therefore, so long as the plaintiff supplies sufficient facts for the defendant to easily determine that it can non-frivolously remove the case under the pertinent statute, the 30-day clock under § 1446(b)(3) begins.[14]  Cf. Universal Truck & Equip. Co., 765 F.3d at 108 (holding that 30-day clock was triggered for purposes of removal on diversity grounds even though plaintiff included non-diverse defendants because it was apparent from the face of the complaint that the non-diverse defendants were fraudulently joined); Universal Truck & Equip. Co., Inc. v. Caterpillar, Inc., 653 Fed. Appx. 15, 19 (1st Cir. June 27, 2016) (explaining the decision in Universal Truck & Equip Co., 765 F.3d at 108, and stating that the 30-day clock started in that case because "[d]efendants knew (or should have known) from the case's

_____

[14] Courts have held that an appellate court's abrogation of a rule that previously foreclosed removal jurisdiction begins the 30-day clock under § 1446(b)(3). See Borne v. ANCO Insulations, Inc., No. 20-134-BAJ-RLB, 2020 WL 6277307, at *6 (M.D. La. Sept. 18, 2020) (finding that 30-day clock for removal began when the Fifth Circuit overruled prior precedent about whether § 1442(a)(1) required a causal connection or mere nexus).  Such a circumstance does not exist here.

beginning that they could remove the suit to federal court under diversity jurisdiction").

The State's disclaimers in this and the AFFF Suit were always clear and unambiguous.  Since the beginning of this case, the State has changed neither the disclaimer nor the scope of its claims.  3M's argument that the State's disclaimer was insufficient to defeat removal jurisdiction was obvious from the face of the initial complaint, and it was always known to 3M (or always should have been known to 3M).  For those reasons, the State's disclaimer did not delay or prevent the start of the 30-day clock under § 1446(b).  See Universal Truck & Equip Co., 765 F.3d at 108; Dahl, 478 F.3d at 970.

3M also argues that removability was not ascertainable because it only determined that § 1442(a)(1) was applicable to this suit after it conducted an independent investigation which revealed that "contamination from MilSpec AFFF sources plausibly overlaps with the putative non-AFFF contamination ostensibly at issue in this action."  See doc. no. 30-1 at 10.  This argument lacks merit for several reasons.  First, it was clear from the initial pleadings that there was overlap in the areas of contamination covered by the two suits.  Because the State alleged from the outset that there was overlap in contamination, 3M's "plausible overlap" theory was ascertainable from the initial pleadings.

Second, if the facts alleged in the pleadings were insufficient for 3M to remove under § 1442(a)(1), 3M filled in any remaining blanks when it removed the AFFF Suit in July 2019.  See Romulus, 770 F.3d at 79 n.9 (stating that the

defendant cannot ignore facts that it submitted into the record to support an earlier removal); State v. 3M, Case No. 19-cv-800-JD, ECF doc. no. 1 at 8 ¶¶ 20-30 (discussing history of MilSpec AFFF and of 3M's supply of MilSpec AFFF in New Hampshire). The factual basis for 3M's removal of this suit is the same as the factual basis for its July 2019 removal of the AFFF Suit: 3M's supply of MilSpec AFFF at Pease Air Force Base. Compare doc. no. 1 ¶ 30 (notice of removal in this suit) ("MilSpec AFFF released from the Pease Air Force Base plausibly migrates to the Great Bay estuary and other surrounding surface waters where it commingles with PFAS that derives from other, non-AFFF sources."), with State v. 3M, Case No. 19-cv-800-JD, ECF doc. no. 1 at 8 ¶ 20 (AFFF Suit Notice of Removal) (removal justified because the State alleged use of AFFF at Pease Air Force Base). The only relevant difference between this suit and the AFFF Suit is the State's disclaimer of recovery for AFFF contamination, and, as discussed, the potential ineffectiveness of this disclaimer to undermine removal jurisdiction was apparent from the initial pleadings, so it did not obviate 3M's responsibility to remove within 30 days after the State provided sufficient facts for 3M to set forth its plausible overlap theory. See Universal Truck & Equip. Co., 765 F.3d at 108; Dahl, 478 F.3d at 970. Because the facts alleged in both suits are the same, and the basis for removal in both suits is the same, and because 3M could have always raised its legal argument that the one difference between the cases—the disclaimer—is ineffective to defeat removal jurisdiction, the removal statute required 3M to remove this suit at least within 30 days of removing the AFFF Suit. See id.

The court rejects 3M's plausible overlap argument for a third reason.  If a specific location in which plausible overlap in contamination were necessary to trigger § 1446(b) notwithstanding the breadth of the State's initial pleadings or 3M's earlier removal of the AFFF Suit on the same grounds, the State's December 2021 initial disclosures revealed that the State intended to recover for contamination from non-AFFF sources at PSNH Schiller Station in Portsmouth.  PSNH Schiller Station is near Pease Air Force Base, where it has been undisputed from the beginning that 3M supplied MilSpec AFFF.  The State also alleged in its initial complaints that contamination from both AFFF and non-AFFF sources has occurred in tidal estuaries, doc. nos. 1-3 ¶ 2 and 1-5 ¶ 3, and a large, well-known tidal estuary—Great Bay—directly abuts Pease Air Force Base.  That the locations are close to each other is sufficient because the State alleged that PFAS compounds migrate "long distances" through soil and groundwater and do not decompose once released.  Doc. no. 1-3 ¶¶ 45-48 (alleging that "[o]nce these PFAS compounds are applied, discharged, disposed of, or otherwise released onto or into the air, soil, sediments or water, they migrate through the environment and into groundwater, surface water, fish, wildlife, marine resources, and other natural resources.").  3M only needed to apply a "reasonable degree of intelligence," Cutrone, 749 F.3d at 143, to easily determine that PFAS from MilSpec AFFF released at Pease Air Force Base plausibly overlaps with non-AFFF contamination at PSNH Schiller Station or Great Bay.

3M also relies on <u>Orange County Water District v. 3M Company</u> to support its argument against remand.  2022 WL 605630, at *1-2 (9th Cir. Mar. 1, 2022).  In <u>Orange County Water District</u>, the Ninth Circuit reversed, in an unpublished decision, a district court's remand order based on untimeliness.  2022 WL 605630, at *1-2.  The Ninth Circuit reasoned that § 1446(b)'s 30-day clock was not triggered by an ambiguous statement that military sites were "potential sources" of environmental contamination subject to the suit, which involved several defendants.  <u>Id.</u>  The Ninth Circuit held that this statement did not clearly and unequivocally connect <u>3M</u> to the suspected source of environmental contamination forming the lawsuit's basis.  <u>Id.</u>

Orange County Water District is distinguishable.  Here, the State made clear and unambiguous in its pleadings that the alleged contamination covered the whole of New Hampshire, including certain military sites such as Pease Air Force Base. The pleadings added that 3M supplied AFFF to the United States military in New Hampshire, which caused contamination of soil and groundwater in New Hampshire.  And, lastly, the State's allegations were not conditional or merely asserting "potential" contamination by an unspecified defendant; rather, the State alleged that 3M <u>had</u> supplied AFFF at military sites in New Hampshire which migrated long distances and contaminated land and water throughout the entire state.

Finally, 3M does not argue that it could not have ascertained the facts to assert a colorable federal contractor immunity defense prior to March 30, 2022.

Presumably this is because, in its 2019 notice of removal in the AFFF Suit, 3M set out all of facts it uses now to assert that defense. And, under <u>Romulus</u> the defendant cannot ignore facts that it supplied when it previously put them in the record and relied on them. <u>See</u> 770 F.3d at 79 n.9 (stating that defendant was under "no duty" to provide facts for removal originally, but defendant "could not subsequently ignore" an "uncontested fact" alleged in an earlier attempt at removal).

III.     <u>Summary</u>

In summary, the court finds two alternative bases on which to remand this lawsuit. First, 3M has not shown that a "nexus" exists between the State's claims in this case and its production of AFFF for the United States military. Therefore, the elements for removal jurisdiction under the federal officer removal statute, § 1442(a)(1), have not been met.

Second, 3M's removal was untimely under § 1446(b). Applying a reasonable degree of intelligence to the clear and unambiguous facts alleged by the State, 3M's theory for removal (i.e., that PFAS compounds from MilSpec AFFF plausibly migrated and commingled with PFAS compounds from other sources) was ascertainable more than 30 days before 3M filed its notice of removal in this suit. The record reveals at least three triggers for the 30-day clock to begin to run under §1446(b)(3) that 3M ignored during the three years of this litigation: the May 2019 complaint in the AFFF Suit, the July 2019 removal of the AFFF Suit, and the

State's December 2021 initial disclosures.  Thus, 3M's notice of removal filed on

April 29, 2022, was untimely.  <u>See</u> 28 U.S.C. § 1446(b)(3).

## CONCLUSION

For the foregoing reasons, the State's motion to remand (doc. no. 12) is

granted.  Any pending motions are denied as moot.  This case shall be remanded to

the Merrimack County Superior Court.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 29, 2023

cc:    Counsel of Record

28 U.S.C. § 1442 provides:

**Federal officers or agencies sued or prosecuted**

(a)  A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1)  The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

(2)  A property holder whose title is derived from any such officer, where such action or prosecution affects the validity of any law of the United States.

(3)  Any officer of the courts of the United States, for or relating to any act under color of office or in the performance of his duties;

(4)  Any officer of either House of Congress, for or relating to any act in the discharge of his official duty under an order of such House.

(b)  A personal action commenced in any State court by an alien against any citizen of a State who is, or at the time the alleged action accrued was, a civil officer of the United States and is a nonresident of such State, wherein jurisdiction is obtained by the State court by personal service of process, may be removed by the defendant to the district court of the United States for the district and division in which the defendant was served with process.

(c)  Solely for purposes of determining the propriety of removal under subsection (a), a law enforcement officer, who is the defendant in a criminal prosecution, shall be deemed to have been acting under the color of his office if the officer--

(1)  protected an individual in the presence of the officer from a crime of violence;

(2)   provided immediate assistance to an individual who suffered, or who was threatened with, bodily harm; or

(3)   prevented the escape of any individual who the officer reasonably believed to have committed, or was about to commit, in the presence of the officer, a crime of violence that resulted in, or was likely to result in, death or serious bodily injury.

(d)   In this section, the following definitions apply:

(1)   The terms "civil action" and "criminal prosecution" include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued. If removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court.

(2)   The term "crime of violence" has the meaning given that term in section 16 of title 18.

(3)   The term "law enforcement officer" means any employee described in subparagraph (A), (B), or (C) of section 8401(17) of title 5 and any special agent in the Diplomatic Security Service of the Department of State.

(4)   The term "serious bodily injury" has the meaning given that term in section 1365 of title 18.

(5)   The term "State" includes the District of Columbia, United States territories and insular possessions, and Indian country (as defined in section 1151 of title 18).

(6)   The term "State court" includes the Superior Court of the District of Columbia, a court of a United States territory or insular possession, and a tribal court.

28 U.S.C. § 1446 provides:

**Procedure for removal of civil actions**

**(a) Generally.**

A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

**(b) Requirements; generally.**

(1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

(2)(A) When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action.

(B) Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons described in paragraph (1) to file the notice of removal.

(C) If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal.

(3) Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

**(c) Requirements; removal based on diversity of citizenship.**

(1) A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.

(2) If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that--

(A) the notice of removal may assert the amount in controversy if the initial pleading seeks--

(i) nonmonetary relief; or

(ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and

(B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

(3)(A) If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an "other paper" under subsection (b)(3).

(B) If the notice of removal is filed more than 1 year after commencement of the action and the district court finds that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding shall be deemed bad faith under paragraph (1).

(d) Notice to adverse parties and State court.--Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and

the State court shall proceed no further unless and until the case is remanded.

**(e) Counterclaim in 337 proceeding.**

With respect to any counterclaim removed to a district court pursuant to section 337(c) of the Tariff Act of 1930, the district court shall resolve such counterclaim in the same manner as an original complaint under the Federal Rules of Civil Procedure, except that the payment of a filing fee shall not be required in such cases and the counterclaim shall relate back to the date of the original complaint in the proceeding before the International Trade Commission under section 337 of that Act.

(g) Where the civil action or criminal prosecution that is removable under section 1442(a) is a proceeding in which a judicial order for testimony or documents is sought or issued or sought to be enforced, the 30-day requirement of subsection (b) of this section and paragraph (1) of section 1455(b) is satisfied if the person or entity desiring to remove the proceeding files the notice of removal not later than 30 days after receiving, through service, notice of any such proceeding.

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), undersigned counsel certifies that this brief:

(i)     complies with the type-volume limitation of Rule 29(a)(5) because it contains 12,862 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii)    complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 2016 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.


Dated:  July 11, 2023                    /s/ *Michael A. Scodro*
                                          Michael A. Scodro